No. 46,351

June Lutz, *Appellant*, v. Velma L. Peine, *Appellee.*

(498 P. 2d 60)

Opinion filed June 10, 1972.

*Jerry W. Hannah,* of Topeka, argued the cause, and *William S. Bowers,* of Ottawa, was with him on the brief for the appellant.

*R. Michael Latimer,* of Ottawa, argued the cause, and *Richard O. Skoog,* also of Ottawa, was with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is a personal injury action. Judgment was entered in favor of defendant on a special verdict of the jury. Plaintiff appeals.

Plaintiff Lutz was lying down across the seat of a parked 1950 Chevrolet pickup truck, asleep, when defendant Peine drove into the rear of the pickup in which the plaintiff was sleeping.

Thurman Carter and the plaintiff owned sheep which were

located at a farm near the scene. They drove the pickup from Ottawa, Kansas, to the scene where the collision occurred. Carter parked the pickup headed west "off the roadway between the fence and the grader ridge" on the east-west road. Carter was employed regularly by plaintiff and was paid every two weeks. He was also at the time of the collision under the direction and control of plaintiff.

The collision occurred shortly after 1:00 p. m., on October 19, 1967. The roadway was a smooth, gravel surface, twenty-five or thirty feet wide. The weather was clear; it was daylight; the sun was shining.

The pickup involved was owned by the plaintiff, but it was driven and parked by Carter. Carter, after parking the truck, proceeded to do some weed mowing while the plaintiff pulled weeds at the farm for about fifteen or twenty minutes. Because she was not feeling well, she returned to the pickup, lay down and fell asleep on the seat of the pickup, and was sleeping at the time of the collision.

The defendant testified at the trial that she and her husband ate lunch at their farm home southeast of Ottawa on the day in question at about noon. Thereafter, she left for Ottawa at about 1:00 p. m. Her home was about two and one-half miles from the accident scene.

The undersheriff of Franklin county who investigated the accident found the pickup occupied by plaintiff headed westerly, off the right side of the road. He testified that the right two-thirds of the front of defendant's car was damaged and that the left two-thirds of the rear of the pickup was damaged. At the trial the undersheriff said the pickup was about twenty feet east of a driveway and sitting "partly on the road and partly off the road."

The defendant saw Carter helping the plaintiff after the accident. She observed Carter going to the telephone, and after returning to the scene she again observed Carter helping plaintiff.

Plaintiff's injuries were established by the testimony of herself, Carter, her employer Phillip Everett, and Drs. M. E. Pusitz and Richard Tozer of Topeka. Plaintiff said the impact caused her breast to strike the steering wheel three times and that she was rendered unconscious. She was taken to the Ottawa hospital by ambulance where she remained twenty-four hours. She had pain in her neck and her head. She remained home over the weekend

with pain in the cheek and in the head and neck areas. On November 5, 1967, she was hospitalized for three weeks for chest pains that may have been complicated with pneumonia. She was later treated by Drs. Pusitz and Tozer. She made 121 trips from Ottawa to Topeka for therapy with Dr. Pusitz and none of these treatments helped her. Dr. Tozer testified the pneumonia that required her to go to the hospital several weeks after the accident was not related to the accident.

The record shows that plaintiff Lutz was precluded from showing that defendant Peine had testified in her discovery deposition that she had been watching Carter on the mowing machine prior to the impact.

At the conclusion of the trial, the plaintiff moved for a directed verdict on the issue of liability. In considering the motion, the court ruled that the defendant was negligent and that her negligence was a proximate cause of the collision, and also ruled that the question of contributory negligence should be submitted to the jury. The case was submitted to the jury on the two following special questions:

"1. Do you find the defendant has met the burden of proof that plaintiff was contributorially [sic] negligent in the manner the vehicle was parked and that this contributed as a proximate and direct cause of the collision?

"2. What amount of money would compensate plaintiff for the injuries and damages she received from the collision?"

The jury returned their verdict answering question No. 1, "Yes," and answering question No. 2, "$5,000.00." The plaintiff filed a motion for a new trial, which was overruled by the trial court and judgment was entered for the defendant on the special question. The plaintiff appeals from this ruling.

We first refer to the propriety of submitting question No. 1 to the jury. The form of the question requires three answers. Did defendant meet the burden of proof? Was plaintiff contributorially negligent in the manner the vehicle was parked? Was the manner the vehicle was parked a proximate cause of the collision? The main object of special questions is to ferret out the various facts separately in order to enable the court to apply the law and to guard against any misapplication of the law by the jury. (*Allen v. Ellis,* 191 Kan. 311, 380 P. 2d 408.) A special question should be clear and understandable, requiring a single answer on one issue of fact. This question requires one answer to three questions. It

also asks the jury to answer questions which are basically issues of law. (*Ziegelasch v. Durr*, 183 Kan. 233, 326 P. 2d 295.) We have approved verdicts based on like questions, but such questions were supplemented by questions requiring specific findings of fact. (*Applegate v. Home Oil Co.*, 182 Kan. 655, 324 P 2d 203.)

The only act of negligence charged against the plaintiff was the manner in which the truck was parked. The jury was instructed on this issue as follows:

"The laws of Kansas provide that upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of the highway, but in every event a clear and unobstructed width of at least twenty feet of the highway opposite the standing vehicle shall be left for the free passage of other vehicles, and a clear view of the stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway." (In accord with PIK 8.47a, page 212.)

The court instructed that the defendant had the burden of proving contributory negligence. (Instruction No. 9.) The jury was also instructed that violation of a duty or a law is negligence, but that to permit recovery such negligence had to be a direct cause of the injury and damage. (Instruction No. 13.) Although not covered in the instructions, it follows that a violation of a duty or a law is contributory negligence, but to deny recovery such contributory negligence had to be a direct cause of the injury or damage.

Carter testified he parked the truck on the right side of the roadway headed in a westerly direction; that he parked the truck off the roadway between the fence and the grader ridge. (Exhibits 1 and 2 disclose the grader ridge was off the traveled portion of the highway.) Carter also testified the roadway was twenty-five or thirty feet in width at that point.

Plaintiff Lutz testified they parked off the road and into the ditch between the grader ridge and the fence line.

Undersheriff Richardson testified that the right two-thirds of the front of defendant's vehicle was damaged, and the left two-thirds of the pickup was damaged. He also testified:

"Q. And can you tell the Court and jury approximately where at the scene the truck was positioned at the time you arrived?

"A. At the time I arrived the truck was about, around 20 feet from the driveway sitting partly in the road and partly off the road.

"Q. All right, about 20 feet which direction from the driveway?

"A. This is approximately, it is east of the driveway.
"Q. And you say it was part in the ditch and part in the road?
"A. Yes."

Since the testimony of the undersheriff as to the location of the plaintiff's truck was about an hour after the collision, we do not believe the testimony has any probative value as to the location of the truck at the time of the collision. The record discloses no evidence on which the jury could find the plaintiff violated any duty or law as to the manner in which the truck was parked; thus, defendant failed to sustain the burden of proof on this issue. In the absence of evidence to support an answer, the court erred in submitting question No. 1 to the jury.

It follows that the court should have submitted the cause on the question of damages only. Since the issue of damages was submitted and the jury made a determination of the amount, should this amount be binding on the parties on appeal? We cannot speculate on the effect of submitting question No. 1 on the answer to question No. 2. The jury was properly instructed on the elements of damage. In the absence of any contrary showing, we must assume the jury correctly and consciously followed the court's instructions.

Notwithstanding this reasoning, plaintiff claims she is entitled to a new trial on the issue of damages because of the inadequacy of the judgment. She points out that the evidence disclosed special damages of $6,690.85 and the jury's verdict was $5,000.00. The items of special damages were medical bills, $2,385.85; income loss to date of trial, $2,453.00; travel expense for therapy (121 trips), $1,452.00; and physical damage to truck, $400.00. The record does not disclose that the defendant questioned any of these items of damage. Defendant argues on appeal that $1,245.35 of these damages resulted from a pneumonia episode unrelated to the accident. Defendant also argues that a portion of the doctor bill and travel expense related to therapy treatments could have been disallowed, based on plaintiff's statement that they did not help her.

In *Timmerman v. Schroeder*, 203 Kan. 397, 454 P. 2d 522, a statement listing medical expenses of $357.95 was admitted into evidence by agreement of the parties. In this case the jury returned a verdict of $357.95, notwithstanding evidence of pain and suffering and disfigurement. We said:

"A verdict in a personal injury action limited to the exact amount of un-
contradicted medical expenses incurred as a result of an accident, and which
verdict includes nothing for the pain and suffering or permanent injury,
shown by uncontradicted evidence is in part contrary to the evidence and
should be set aside on motion for new trial. . . ." (p. 399.)

The uncontradicted medical expense and loss of wages of the
plaintiff was $5,445.50 after eliminating the expense of the pneu-
monia episode. The statement of plaintiff that the therapy treat-
ments did not help her does not justify a disallowance of the cost
of the treatments. We do not believe there is any distinction be-
tween the medical expense dealt with in *Timmerman* and the
medical expense and loss of wages involved here. The result is
that the jury failed to make any award for pain and suffering or
temporary and permanent injuries incurred by the plaintiff in this
action.

We also stated in *Timmerman:*

"A new trial on the issue of damages only should not be granted when
there appears a strong suspicion that inadequate damages were awarded as a
compromise on the issues of liability and damages. . . ." (p. 401.)

The jury in this case found that plaintiff was guilty of contribu-
tory negligence. In view of this no compromise could have been
made. A compromise could exist only under circumstances where
the jury found the plaintiff was not guilty of contributory negli-
gence.

The trial court found the defendant was guilty of negligence
as a matter of law and that her negligence was a proximate cause
of the collision. On appeal we find the plaintiff free of contribu-
tory negligence as a matter of law. We can see no legal reason
why the issue of liability should be tried again. We conclude this
action should be remanded to the trial court with instructions to
try the issue of damages only. We are satisfied that justice
demands this result.

Reversed and remanded with instructions.