No. 65,142

PRESTON MILLER, *Appellee/Cross-Appellant,* v. ZEP MANUFAC-TURING COMPANY, *Cross-Appellant/Cross-Appellee,* and STRICK-LAND THROUP CONSTRUCTION COMPANY, INC., *Appellant/Cross-Appellee.*

(815 P.2d 506)

Opinion filed July 12, 1991.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Overland Park, argued the cause, and *Bradley S. Russell*, of the same firm, was with him on the briefs for appellant.

*Robert O. Jester*, of Ensz and Jester, of Kansas City, Missouri, argued the cause, and *Tammy N. Etem*, of the same firm, was with him on the brief for appellee.

*Joseph R. Ebbert*, of Boddington & Brown, Chtd., of Kansas City, argued the cause and was on the brief for cross-appellant/cross-appellee.

The opinion of the court was delivered by

Six, J.: This is a premises liability case. In addition to the premises liability issue, we shall consider: (1) the relationship of damages awarded for personal injury and the evidence, or lack thereof, supporting the award; (2) scope of employment; (3) proximate and intervening cause; and (4) the concept of the law of the case.

The appeal arises from a jury verdict in the personal injury action of Preston Miller (appellee/cross-appellant) against Zep Manufacturing Company (Zep) (cross-appellant/cross-appellee) and Strickland Thorup Construction Company (Strickland) (appellant/cross-appellee). The jury returned a verdict of $30,750 for future medical expenses and lost wages, finding Miller 49% negligent, Zep 6% negligent, and Strickland 45% negligent.

Strickland appeals on the issues of liability and damages. Miller cross-appeals the jury's failure to award damages for past medical

expenses and for pain and suffering. Zep cross-appeals the trial court's ruling that its employee, Harold Mallin, was acting within the scope of his employment at the time of the alleged negligent acts.

The appeal was transferred to this court. Our jurisdiction is under K.S.A. 20-3018(c).

We reverse and remand for a new trial.

On July 27, 1990, the Court of Appeals rendered its unpublished opinion in *Miller v. Steel Benders, Inc.*, No. 64,485 (*Miller I*). The Court of Appeals found that the issue of whether Steelbenders, Inc. (Steelbenders) reserved control of the premises was a factual question precluding summary judgment. However, the Court of Appeals affirmed the trial court's ruling granting summary judgment to Steelbenders, reasoning that the pit was open and obvious and Steelbenders was under no duty to remove known and obvious dangers. Additionally, the Court of Appeals reasoned that Mallin's act of removing the flags was an independent intervening act relieving Steelbenders of liability.

While *Miller I* was pending, Strickland appealed the trial result in the case at bar. Miller and Zep cross-appealed. None of the parties in *Miller I* petitioned for review. The time for such a petition has expired.

## Facts

On January 23, 1987, Miller sustained injuries when he fell into a concrete pit located in an industrial building being constructed by Strickland for Steelbenders on property owned by J&R Land Company (J&R) in Lenexa, Kansas. Steelbenders was J&R's tenant. Strickland's construction contract was with J&R; however, the building was being constructed to Steelbenders' specifications.

At Steelbenders' request, Strickland constructed a "slitter pit" or "looping pit," with concrete walls and floor, approximately 6 feet wide, 10-12 feet long, and 10-15 feet deep. The pit was built, as recommended by the manufacturer, to accommodate a slitter machine. At the time of Miller's fall, the machine had not been installed.

Harold Mallin was a sales representative of Zep. Zep sells chemicals and janitorial products to commercial industry. Steel-

benders asked Mallin for a quote on labor and materials to seal the concrete floor of the building. Steelbenders wanted a finished job. Mallin normally only sold the chemicals and supplies; however, he quoted the job with labor and materials. He has quoted and provided labor and materials, on occasion in the past, in carrying out his duties for Zep.

Miller was employed as an environmental services instructor. In this position, he taught handicapped and mentally retarded persons custodial and housekeeping skills. Miller was a customer of Mallin's. Previously, Miller had supplied labor through Mallin for Mallin's customers. Mallin contacted Miller regarding the Steelbenders job and Miller agreed to perform the labor necessary to seal the floors.

At the time of his fall, Miller's eyesight was between 20/100 and 20/200. His eyesight is not correctable by glasses. Miller testified that he could see the pit and that his vision impairment did not prevent him from seeing it.

Dean Huggins was employed by Strickland as the job superintendent for the Steelbenders building. Huggins testified that a temporary certificate of occupancy on the building had been issued by the City of Lenexa on December 31, 1986. Strickland was allowed by the city to turn over occupancy of the building to Steelbenders after receiving the temporary certificate of occupancy. However, the keys to the building were not made available to Steelbenders. Strickland allowed Steelbenders limited access during the day to store items in one end of the building. Strickland did not allow Steelbenders access to the slitter pit area because of the potential hazard of the open pit. Huggins testified further that Strickland was responsible for the building until it was completed. The building was completed in June 1987, at which time possession was turned over to Steelbenders. Until that time, Strickland had possession of the building.

Bill Haight was employed by Steelbenders as operations manager in January 1987. He had arranged with Mallin to have the concrete floors sealed on January 23, 1987. Haight testified that the building was not assigned to Steelbenders until the middle of 1987. On the evening in question, he borrowed the key to the building from Huggins to have the floor sealed in preparation for the arrival of some heavy equipment. Huggins reluctantly

gave Haight the key. According to Haight, Huggins was concerned that someone would have the key to the building the entire weekend. (January 23, 1987, was a Friday and Miller would need to work over the weekend.) Huggins testified that he was opposed to giving Haight the key because the concrete floor had not cured long enough to be sealed and because he was afraid the building might be unlocked over the weekend when he was not there.

Miller arrived at the Steelbenders building around 4:00 or 4:30 p.m. on January 23, 1987. Miller brought Larry Lott with him to help seal the floors. Miller and Lott waited for Mallin, who arrived a few minutes later. When Mallin arrived, the three men entered the warehouse. Shortly after arriving, Miller, Mallin, and Haight made a "walk-through" of the job. Miller testified that they walked over to the pit and it was mentioned that it would be a "horrible thing" if someone would fall in the pit.

In December 1986, a few weeks before Miller's fall, the pit was temporarily covered with plywood for 10 days to 2 weeks. Strickland covered the pit so no one would accidentally fall in. In addition, the pit was surrounded by ropes with flags attached. The cover was removed because it was not strong enough to support much weight. There were a couple of forklifts that were used near the pit, and Strickland was concerned that the cover would collapse if one of the forklifts drove over it. Strickland did not consider using metal plating to cover the pit.

The testimony of Miller, Mallin, Huggins, and Haight differed regarding the condition of the pit on January 23, 1987. Miller testified that there were green and yellow flags attached to ropes going through some beams that were in the immediate area but not directly around the pit. (The ropes with flags will be referred to as flags, as the flags were permanently attached to the ropes.) There were no flags around the pit itself. Mallin testified that there were two rows of bright-colored flags wrapped around beams which made a square around the pit. According to Mallin there was nothing else around the pit. Lott testified that there were yellow flags strung around the beams some distance away from the pit. There were no flags or 2 × 4's immediately around the pit itself.

Huggins testified that there were two rows of flags wrapped around beams a distance away from the pit—one strand waist high and one strand knee high. In addition, there was a wooden barricade with a railing constructed of 2 × 4's right around the pit. Haight testified that there were two barriers around the pit. The outer barrier consisted of the two tier flags wrapped around the beams. The inner barrier consisted of 2 × 4's stuck in around the pit with flags wrapped around the 2 × 4's. He did not recall a structure with railing constructed of 2 × 4's.

Miller testified that the flags had to be taken down to move equipment and to seal the cement floor between the pit and the flags. Although Miller was unsure who took down the flags, he stated that he did not take down the flags.

Mallin testified at trial that the flags were down when he left. He did not remember if he assisted in removing the flags. In a pretrial deposition, Mallin testified, "[W]e removed them." Upon further questioning at trial, Mallin stated that he "probably did" participate in removing the flags. He did not remember Miller or Lott removing the flags. Haight testified that he did not move or make arrangements to have the flags moved.

Sealing the concrete floor is a multi-step process. First, the floor is swept. Second, a neutralizer is applied with mops. The floor is then hosed down and squeegeed. Third, an etching acid is applied with mops, and the floor is hosed down and squeegeed to remove the acid. The concrete floor is allowed to dry for approximately 12 hours. Finally, the sealant is applied with applicators.

On January 23, 1987, Miller and Lott had intended to perform the first three steps. They had planned to return later to apply the sealant after the concrete floor had dried. They were sealing one-half of the building on the weekend of January 23-25 and intended to seal the other half the following weekend.

Miller fell into the pit at approximately 10:00 p.m. while he was hosing down the acid. Miller stated that he was spraying the floor, constantly backing up, and all of a sudden he stepped off into the pit and sustained injury. On cross-examination, Miller admitted that he could have hosed down the floor while walking forward as well as walking backwards.

At trial Miller presented the expert testimony of Denzell Ekey, a safety consultant. Ekey visited the Steelbenders building in September 1989. At the time of his inspection, the slitter machine was installed around the pit. Ekey measured the distance of the pit from the beams which the flags allegedly had been wrapped around in January 1987. Ekey testified that at the closest point of the rectangle of flags, the pit was 12 feet away. Ekey discussed various safety standards including ANSI (American National Safety Institute), OSHA (Occupational Safety and Health Act), and the City of Lenexa Municipal Code which adopted the Uniform Building Code. The ANSI standards are commonly used in the construction industry and are incorporated into OSHA regulations. Ekey stated that under these three similar safety standards the pit would be defined as a floor opening. These standards provide that when a floor opening is not covered, it must be attended or protected by a guardrail on all sides. Based on deposition testimony of witnesses and his inspection of the Steelbenders building, Ekey stated his opinion that the pit area did not comply with the safety standards at the time of Miller's fall because the pit was not protected by a guardrail or a cover.

### Trial Court Rulings

Miller filed suit against Strickland, Zep, and Steelbenders. Prior to trial, the court granted summary judgment to Steelbenders, holding that Steelbenders had no duty to do anything with respect to the pit. The trial court reasoned that Strickland as general contractor had the duty to keep the site in a safe condition. The trial court also ruled as to defendants Zep and Strickland that the pit was an open and obvious condition as a matter of law. In addition to the duty to warn of the danger (which is not necessary when danger is open and obvious), the trial court held that Strickland had a duty to keep the Steelbenders building in a reasonably safe condition on January 23, 1987, precluding summary judgment for Strickland. As to Zep, the trial court ruled that whether Mallin's act of taking down the flags contributed to Miller's injury is a fact question to be decided by a jury, precluding summary judgment for Zep. The summary judgment granted to Steelbenders was certified as a final judgment for purposes of appeal. Miller appealed.

While Miller's appeal of the summary judgment for Steelbenders was pending, the matter came on for trial between plaintiff Miller and defendants Zep and Strickland.

After the close of evidence, Zep moved the trial court to determine whether Miller was a statutory employee of Zep under the laws of Kansas or Missouri. Zep argued that Miller was not. In response, Strickland moved the court for a determination that Miller was an employee of Zep, requesting that Zep be dismissed. The trial court ruled as a matter of law that Miller was an independent contractor at the time of his injuries. The independent contractor ruling is not challenged on appeal.

The trial court was concerned because the jury failed to award Miller uncontroverted damages for medical expenses up to the date of trial. The trial court submitted the following special question to the jury, which was returned as follows: "Does the amount of your verdict in paragraph 3(B)(b) include any amount of past medical expenses? Yes _____ No __X__."

The trial court accepted and entered a total verdict of $30,750, which was reduced pursuant to K.S.A. 1990 Supp. 60-258a by Miller's 49% fault. Judgment was entered for Miller against Zep in the amount of $1,845 and against Strickland in the amount of $13,837.50.

### Strickland—Its Duty to Maintain the Building

Strickland argues that the trial court erred in denying its motion for summary judgment and its motion for a directed verdict because it had no duty to maintain the Steelbenders building in a reasonably safe condition for the following reasons: (A) Strickland was not the possessor of the building on January 23, 1987; (B) Miller was not an invitee of Strickland; and (C) Strickland owed no duty to Miller because the pit was a known and obvious danger of which Miller was warned.

Miller's claim alleged that Strickland failed to keep the premises in a reasonably safe condition. To hold a defendant liable for failure to keep premises in a reasonably safe condition, the defendant must be the owner, occupier, or possessor of the premises. *Summers v. Montgomery Elevator Co.*, 243 Kan. 393, 400, 757 P.2d 1255 (1988); *Hall v. Quivira Square Development Co.*,

9 Kan. App. 2d 243, 244, 675 P.2d 931, *rev. denied* 235 Kan. 1041 (1984).

Restatement (Second) of Torts § 328E (1964) defines a "possessor of land," in part, as: one who is in occupation of the land with the intent to control it. In determining the liability of a possessor of land, we have applied the occupation with intent to control principle. *Summers,* 243 Kan. at 400; *Hall,* 9 Kan. App. 2d at 244.

Strickland argues that it may not be held liable because it relinquished control of the Steelbenders building on January 23, 1987. Strickland asserts that once Huggins turned the key over to Haight, Steelbenders had absolute control over the building.

Miller counters that the testimony of Huggins established that Strickland was in control of the building on January 23, 1987. Strickland maintained access to the building and restricted access to the pit area. Miller also asserts that the fact Strickland constructed the barriers around the pit is evidence of Strickland's intent to control the area. See *Huxol v. Nickell,* 205 Kan. 718, 724, 473 P.2d 90 (1970). Zep joins in Miller's argument.

Miller and Zep are correct. Huggins testified that Strickland exercised control over the building and restricted access to the pit area. He further testified that Strickland was responsible for the building until it was completed in June 1987. After giving the key to Haight, Huggins testified that he returned to the building, replaced the flags, and instructed the workers to keep the flags up. Although this testimony is controverted, it suggests Strickland's intent to control the premises after the key was given to Haight.

In premises liability cases, the duty of care owed by the possessor to the injured party depends, generally, upon the status of the party entering the premises. *Britt v. Allen County Community Jr. College,* 230 Kan. 502, 503-04, 638 P.2d 914 (1982), *overruled on other grounds Bowers v. Ottenad,* 240 Kan. 208, 729 P.2d 1103 (1986).

Strickland asserts that Miller was not an invitee as to Strickland, but merely a licensee. Strickland was not a party to the transaction between the Steelbenders/Zep/Mallin group and Miller. Miller's services were for the sole benefit of Steelbenders. As a licensee, Strickland only owed a duty to refrain from willfully or wantonly

injuring Miller. Miller has made no claim Strickland's actions constituted willful or wanton conduct.

Miller contends that Strickland had contracted to complete the entire building. Miller's services were a benefit to Strickland because he was aiding Strickland in completing its contract with Steelbenders. Thus, Miller was a business invitee of Strickland.

Zep reasons that various contractors on a construction project, as invitees, owe a duty of ordinary care to each other even if they are providing services for another party. *Hendrix v. Phillips Petroleum Co.*, 203 Kan. 140, 453 P.2d 486 (1969).

We held in *Hendrix* that two independent contractors who work on the same premises owe a duty of exercising ordinary care to each other. 203 Kan. at 148-49. *Hendrix* controls this issue. Strickland was the general contractor constructing the building for Steelbenders. Although Strickland's contract was with the landowner, J&R, it is undisputed that the building was being constructed for Steelbenders. Strickland was a business invitee of Steelbenders. Miller was on the premises performing services for Steelbenders. Miller was a business invitee of Steelbenders. Strickland owed Miller a duty to exercise ordinary care.

Strickland argues that it had no duty to warn or protect Miller against the known and obvious danger of the open pit.

Miller counters that a premises owner or occupier must render the premises reasonably safe regardless of whether the danger is obvious. *Scales v. St. Louis-San Francisco Ry. Co.*, 2 Kan. App. 2d 491, 582 P.2d 300, *rev. denied* 225 Kan. 845 (1978). Thus, the issue was properly submitted to the jury to determine if this duty was breached under the evidence presented. Zep concurs in Miller's argument.

Generally, a possessor of land is under no duty to remove known and obvious dangers. *Balagna v. Shawnee County*, 233 Kan. 1068, 1083, 668 P.2d 157 (1983). However, the possessor may be under an affirmative duty to minimize the risk if there is reason to expect an invitee will be distracted, so that he or she will not discover what is obvious, will forget what has been discovered, or will fail to protect against the danger. *Scales v. St. Louis-San Francisco Ry. Co.*, 2 Kan. App. 2d at 498. See Restatement (Second) of Torts § 343A comment f, 220 (1964); and Prosser and Keeton on Torts § 61, 425-27 (5th ed. 1984).

In the case at bar, the trial court ruled as a matter of law that the pit was open and obvious and that Miller was fully aware of it. Miller does not contest this finding, which is supported by his own testimony. Thus, Strickland had no duty to protect against the pit unless Strickland had reason to suspect that Miller would be distracted and forget to protect himself from the dangerous condition of the open pit. Relying on *Scales*, Miller contends that Strickland was subject to this affirmative duty to minimize the risk.

In *Scales*, the plaintiff was injured while working near two openings above an auger in a shaft running from a spur track to a grain elevator. Plaintiff was sweeping spilled rice into one opening when he "slipped" into the other opening. 2 Kan. App. 2d at 495. Defendant contended it had discharged its duty by warning plaintiff of the obvious danger. Relying on Restatement (Second) of Torts § 343A, the Court of Appeals held that defendant was subject to this "stricter duty" to diminish the risk. 2 Kan. App. 2d at 498. The Court of Appeals stated: "Appellee worked under conditions where the slightest slip could bring injury. Under such conditions, even a reasonably careful, non-negligent person could be injured." 2 Kan. App. 2d at 498.

Strickland asserts that the "stricter duty" discussed in *Scales* does not apply in the present case. First, Miller was informed of the pit's danger and made an intelligent choice that entering the premises justified the risk. Section 343A comment e, 219. Second, the facts of this case do not present circumstances where the "slightest slip" could bring about injury. Miller's accident occurred because he was backing up and not paying attention to the pit.

In support of this argument, Strickland relies on the Court of Appeals' reasoning in *Miller I*. The Court of Appeals held that Steelbenders was not under the "stricter duty" to diminish the risk. The Court of Appeals observed that no evidence in the record suggested Steelbenders had reason to believe Miller would be distracted and forget the pit was there. Additionally, the Court of Appeals concluded that a reasonably careful, non-negligent person could easily have avoided injury under the facts developed in the record.

Miller argues that the reasoning in *Miller I* applies only to the record developed before trial with regard to Steelbenders. We agree. Under the record developed at trial with regard to Strickland, the testimony of Huggins establishes that Strickland did anticipate Miller's fall, giving rise to the stricter duty in *Scales.*

Huggins testified at trial that, in addition to the flags, the pit was temporarily covered a few weeks before the accident. Strickland covered the pit so no one would accidentally walk, step, or fall into the pit. Strickland restricted access to the pit area because of concerns that the open pit presented a hazard, in spite of the flags. This testimony is evidence that Strickland anticipated a worker could be distracted and forget the pit was there or fail to protect himself or herself from the danger of the pit.

Miller testified at trial that the concrete between the flags and the edge of the pit had to be sealed. The sealing process involved applying chemicals and water to the concrete floor right up to the edge of the pit. Thus, awarness of the flags may not have prevented his fall.

Ekey, Miller's safety consultant, testified that work place safety standards (ANSI, OSHA, and the Lenexa Uniform Building Code) required the pit to be protected with either a cover or guardrails. Thus, industry standards require additional safeguards in spite of the obviousness of the danger or of a warning.

Although the question is a close one, we feel the evidence was sufficient to go to the jury on the imposition of the stricter duty to affirmatively diminish the risk. The jury found that such duty was breached in spite of the obviousness of the pit, the warning given to Miller, the flags, and Miller's own inattentiveness.

### The Jury Verdict

The jury returned an itemized verdict finding Miller's damages to be $30,000 for future medical expenses and $750 for wage loss to date. The jury found Miller had sustained no damages for pain and suffering, disability and accompanying mental anguish, or medical expenses sustained to date.

Strickland asserts that the jury's award of $30,000 for future medical expenses is not supported by the evidence. According to Strickland, plaintiff's treating physician, Dr. Porubsky, testified that there is a 50% chance Miller will need future shoulder

surgery costing $10,000, and a 90% chance Miller will need future wrist surgery costing $7,500. Thus, according to Strickland, the most the jury could award for future medical expenses was $17,500, and hence, the jury's award must be vacated.

Miller asserts that the amount awarded by the jury which exceeds $17,500 is not so great as to show prejudice on the part of the jury. The jury's award showed a willingness to provide for unexpected or increased cost. Miller contends the jury's award for future medical expenses is supported by substantial competent evidence and should not be disturbed.

Zep adopts the position taken by Strickland. Zep asserts that the specific issue of future medical expenses should be remanded for a second trial on this narrow issue but that the remainder of the jury's verdict should not be disturbed.

We note that Dr. Porubsky testified that his charges would be $1,200 for the wrist surgery and $2,500 for the shoulder surgery in addition to the estimate of $17,500 in other expenses. Thus, the total estimate for future medical expenses would be $21,200.

The jury's verdict of $30,000 for future medical expenses is not supported by the evidence. See *Morris v. Francisco,* 238 Kan. 71, Syl. ¶ 3, 708 P.2d 498 (1985).

Miller cross-appeals the jury's failure to award damages for past medical expenses and for pain and suffering. Miller requests a new trial as to damages only.

Strickland does not dispute Miller's argument. Strickland asserts that the jury's verdict was improperly based on passion, prejudice, and a failure to follow the jury instructions. Strickland contends the jury improperly considered the issue of liability with damages. However, Strickland opposes a new trial on the issues of damages only, arguing that the issue of liability and damages are closely related.

Zep contends that although the jury's verdict is technically incorrect, the verdict, considered in a lump sum, provides adequate damages for Miller. As an alternative to a new trial, Zep suggests that the verdict may be upheld because it is reasonable and was simply mischaracterized by the jury.

At trial, Miller testified that he incurred medical bills totaling $10,352.63. Following Dr. Porubsky's testimony, the uncontroverted bills were admitted.

Miller further testified that he had suffered pain and continues to suffer pain in his wrist, shoulder, neck, and back.

In *Germann v. Blatchford,* 246 Kan. 532, 792 P.2d 1059 (1990), we restated the rules to be applied in considering a claim for inadequate damages. A jury award limited to medical expenses that includes nothing for pain and suffering shown by uncontradicted evidence disregards the jury instruction and is contrary to the evidence, and a new trial is required. 246 Kan. at 538-39 (quoting *Timmerman v. Schroeder,* 203 Kan. 397, 399-400, 454 P.2d 522 [1969]).

In the case at bar, the jury's award is contrary to the evidence. The jury failed to award damages for uncontroverted past medical expenses and for pain and suffering. A new trial is required.

Should the new trial be limited to damages as Miller urges or should the new trial be on all issues as urged by Strickland? In instruction No. 12, the trial court instructed the jury, in part, to set forth the full amount of damage sustained and not to make any reduction attributable to fault. This instruction suggests that damages should be determined independent of fault. See PIK Civ. 2d 20.02 and K.S.A. 1990 Supp. 60-258a.

Strickland asserts that following the verdict, several jurors indicated that they had strong feelings that Miller's negligence was greater than 50% but agreed to compromise in violation of the instructions when considering the issue of damages. This allegation is not supported by the record. When the trial court released the jurors the judge told them that they could stay and talk with the attorneys. However, the trial judge ordered that any contact with the jurors other than that day must be by court order. Strickland filed a motion for leave to contact jurors alleging that the jurors improperly considered the issues of fault and damages together. Strickland asserted it needed this juror inquiry to support its motion for a new trial. The trial judge denied the motion, observing that he was present during the discussion with the jury.

Strickland alleges that the jury, in violation of the instructions, considered damages with liability. Some of the jurors, it is alleged, agreed to find Miller less than 50% negligent if damages were kept low. This involves the mental processes of the jury. Any evidence on this issue would not have been received. K.S.A. 60-

441. Because the trial judge was present when the jury was questioned, he knew what the jurors told Strickland's counsel. He apparently found no suspicion of misconduct.

A new trial on the issue of damages only should not be granted when there appears a strong suspicion that inadequate damages were awarded as a compromise on the issue of liability. *Lutz v. Peine,* 209 Kan. 559, 564, 498 P.2d 60 (1972); *Timmerman,* 203 Kan. at 401; *Scheuler v. Aamco Transmissions, Inc.,* 1 Kan. App. 2d 525, 531, 571 P.2d 48 (1977); and *Johnson v. Meade,* 1 Kan. App. 2d 254, 261, 563 P.2d 522 (1977). To raise any strong suspicion that a verdict awarding inadequate damages was a result of compromise involving the issues of liability and damages, there must be a genuine conflict in the evidence on the issue of liability. *Timmerman,* 203 Kan. at 401.

In *Lutz, Scheuler,* and *Johnson,* new trials were ordered on the issue of damages only. In both *Lutz* and *Johnson,* the defendant was liable as a matter of law. Thus, liability was not an issue. *Scheuler* involved the breach of a written warranty. Liability was not dependent on the jury finding defendant had breached a standard of ordinary care. The issue of liability in these cases was distinct from the issue of damages.

Due to our disposition, we do not reach the issue of the propriety of the trial court's participation in and imposition of post-trial restrictions on juror inquiry.

We note, however, our Rule 169 (1990 Kan. Ct. R. Annot. 122), which mandates the giving in substance of the following upon completion of a jury trial:

"Upon completion of the jury trial and before discharge of the jury, the court shall give the substance of the following instruction:

"You have now completed your duties as jurors in this case and are discharged with the thanks of the court. The question may arise whether you may discuss this case with the lawyers who presented it to you. For your guidance the court instructs you that whether you talk to anyone is entirely your own decision. It is proper for the attorneys to discuss the case with you and you may talk with them, but you need not. If you talk to them you may tell them as much or as little as you like about your deliberations or the facts that influenced your decision. If an attorney persists in discussing the case over your objections, or becomes critical of your service either before or after any discussion has begun, please report it to me."

There was a genuine conflict in the evidence on the issue of liability. The facts indicate that the failure to award damages for past medical expenses and for pain and suffering may have been a compromise on the liability issue. The case is remanded for a new trial on all issues.

## The Alleged Fault of Zep

Zep moved for a directed verdict, alleging that Miller did not prove that Mallin was acting as an agent for Zep on the' evening of January 23, 1987. The trial judge denied the motion on two grounds. First, he noted that Steelbenders wanted a complete job—chemicals and labor. Mallin oversaw the labor and prepared and submitted bills to Steelbenders for both materials and labor. Mallin had provided labor on prior occasions and Zep was aware of that. The trial court stated: "[I]t's just a way that they're doing business as far as I'm concerned." The trial court concluded there was evidence Mallin was acting as an agent for Zep. Second, the trial court noted the issue was not set out as a fact issue in the pretrial order (the pretrial order is not in the record).

Zep then moved to amend the contentions to conform to the evidence. The trial court denied the motion to amend, reasoning if Zep was allowed to amend, the trial court would have to allow Miller to reopen his case.

Zep· cross-appeals, arguing that there was no evidence that Mallin was acting within the scope of his employment when he removed the flags. Zep contends that Mallin's capacity as a sales representative did not include providing labor to apply the products. Any involvement Mallin had with Miller was separate from his representation of Zep.

The scope of employment/employee-employer test is described in *Hollinger v. Stormont Hosp. & Training School for Nurses,* 2 Kan. App. 2d 302, 311, 578 P.2d 1121, *rev. denied* 225 Kan. 844 (1978).

Mallin quoted a price for both product and labor on one form. Mallin had done that before, with Steelbenders and with other customers. The plant manager, Mallin's boss, knew Mallin was making such a bid. Steelbenders' purchase order made out to Zep included both chemicals and labor. Mallin stated that Steelbenders was looking to him to get the job done. Neither Mallin

nor Zep received a fee from the labor charges. Mallin testified that he depends on customers being happy. Miller testified that he used Zep chemicals and supplies to seal the floor. Haight testified that he knew Zep was not providing labor.

The above facts indicate that when Mallin removed the flags, he was acting with a view toward furtherance of Zep's business. See *Hollinger*, 2 Kan. App. 2d at 311. The trial court did not err in instructing the jury that Mallin was acting within the scope of his employment.

### Removal of the Flags—Proximate Cause

Strickland argues that, as a matter of law, Mallin's act of taking down the warning flags cannot be the proximate cause of Miller's injuries. Miller was aware the flags were down and voluntarily elected to continue work. Zep does not brief this issue other than stating it adopts Strickland's argument.

Miller relies in part on the reasoning in *Miller I* which held that Mallin's act was the proximate cause of Miller's injuries. Miller does not suggest that the ruling of *Miller I* be used to hold Strickland free from negligence. Miller asserts that the record developed at trial establishes that the actions of both Strickland and Zep were the proximate cause of Miller's injuries.

Miller stepped off into the pit while walking backwards. If the flags had not been removed, Miller may have realized he was close to the pit, and his injury may not have occurred. Mallin did foresee the injury. Upon arrival at the Steelbenders' building, Miller, Mallin, and Haight observed the pit and discussed the possibility of falling in. The jury must have found that Mallin's act caused Miller's injuries. Normally, proximate cause is a jury question. *St. Clair v. Denny*, 245 Kan. 414, 420, 781 P.2d 1043 (1989); *Sly v. Board of Education*, 213 Kan. 415, 424, 516 P.2d 895 (1973).

### Intervening Cause

Strickland asserts that even if it had a duty to Miller, Mallin's act of removing the flags was an intervening cause relieving Strickland of liability. Strickland relies on the reasoning in *Miller I*. *Miller I* held that Mallin's act of removing the flags was an independent intervening act which relieved Steelbenders of liabil-

ity. Miller contends that it was controverted whether Strickland employees did or did not assist in removing the flags.

Zep argues that Mallin's act cannot be found to be an intervening act of negligence to preclude an assessment of fault against Strickland for two reasons. First, the safety expert testified that the flags were inadequate. Had proper guards been placed on or around the pit, Miller would not have been injured. Second, Huggins testified that he returned at 9:00 or 9:30 on January 23, 1987, and replaced the flags. Mallin left at 6:30 and did not return. Even if Mallin did remove the flags, they were replaced before Miller fell at 10:00. Zep contends that the issue of Strickland's fault was properly submitted to the jury.

The rule that the causal connection between an actor's negligence and an injury is broken by an independent intervening cause so that the actor is not liable is subject to qualification. If the intervening cause is foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause. *Sly v. Board of Education*, 213 Kan. at 424.

The factual disputes argued by the parties are for the jury to resolve. Mallin's act of removing the flags might reasonably have been foreseen. The trial court did not err in submitting the issue of Strickland's failure to maintain reasonably safe premises to the jury.

Next, Strickland argues that Miller's own act of backing into the pit area despite its open and obvious condition was an independent intervening cause.

Strickland did foresee this type of intervening act. This is evidenced by the covering of the pit in December 1986. Huggins testified that the pit was covered because Strickland was afraid someone would walk, step, or fall into the pit. Additionally, Strickland put up the flags and restricted access to the pit area by Steelbenders employees.

Because Miller's act of falling in the pit was or might reasonably have been foreseen, Strickland is not relieved of liability as a matter of law.

### The Law of the Case—*Miller I*

Strickland filed a motion for summary disposition with the

Court of Appeals, asserting that *Miller I* was the law of the case and controlled this appeal. Miller and Zep opposed the motion. The Court of Appeals denied the motion with leave to reassert it in the appeal on the merits.

Strickland asserts that *Miller I* is the law of the case for purposes of this appeal. Strickland reasons the duties owed Miller by Steelbenders mirror the duties owed Miller by Strickland. Strickland contends it is relieved of liability on the same grounds that Steelbenders was relieved of liability in *Miller I. Miller I* ruled that first, Mallin's act of removing the flags was an independent, intervening act and second, Steelbenders had no duty with respect to the pit because it was an open and obvious danger. The stricter duty in *Scales* was held not to apply.

Miller argues that neither the law of the case nor the principle of res judicata apply. First, the defendants are not the same nor are they in privity with Steelbenders, the defendant in *Miller I.* Second, the facts presented are not substantially the same as the facts presented in *Miller I.* Zep concurs with Miller's argument.

When a second appeal is brought to the appellate courts in the same case, the first decision is the settled law of the case on all questions involved and decided in the first appeal and reconsideration will not be given to such questions. *Bartlett v. Davis Corporation,* 219 Kan. 148, 153, 547 P.2d 800 (1976). This law of the case rule applies where the evidence in the second trial, or second appeal, is substantially the same as in the first appeal. *Dyson v. Bux,* 92 Kan. 154, 157, 139 Pac. 1159 (1914); *State of Kansas v. Occidental Life Ins. Co.,* 95 F.2d 935, 936 (10th Cir. 1938).

*Miller I* was a review of the trial court's grant of summary judgment to Steelbenders.

The evidence is different in this appeal. Miller testified that he needed to seal the concrete between the flags and the pit. He specifically testified that if he was inside the flagged area working, the accident could still have happened. This presented a fact issue for the jury. Furthermore, *Miller I* did not discuss whether it was foreseeable that the flags would be removed. We do not know if the record on appeal in *Miller I* included the fact that the cement floor beyond the flags needed to be sealed. This fact makes the removing of the flags foreseeable. In addition,

*Miller I* does not discuss the safety standards. At trial, in the case at bar, Ekey testified that safety standards required a cover or guardrails and that the flags did not comply with safety standards.

These facts preclude applying *Miller I* as the law of this case.

Strickland has not briefed the res judicata argument. Issues not briefed are deemed abandoned on appeal. *Bazine State Bank v. Pawnee Prod. Serv. Inc.*, 245 Kan. 490, 495, 781 P.2d 1077 (1989).

Reversed and remanded for a new trial.

ABBOTT, J., not participating.

TERRY L. BULLOCK, District Judge, assigned.