NOT DESIGNATED FOR PUBLICATION

No. 113,899

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DANIEL J. ZIMMERMAN and SARA K. ZIMMERMAN,
*Appellants*,

v.

RICHARD W. BROWN; MARLENE E. BROWN; and
BROWN, ISERN & CARPENTER,
*Appellees*.

MEMORANDUM OPINION

Appeal from Barton District Court; JOHN E. SANDERS SR., judge. Opinion filed July 29, 2016.
Reversed and remanded.

*Michael J. Wyatt*, of Mann, Wyatt & Rice, LLC, of Hutchinson, for appellants.

*Gerald L. Green*, of Gilliland & Hayes, LLC, of Hutchinson, for appellees.

Before BUSER, P.J., HILL, J., and WALKER, S.J.

*Per Curiam:* The law of the case doctrine compels us to remand this case to the district court once again for trial. When a second appeal is brought in the same case, the first decision of the appellate court is the settled law of the case on all questions involved in that first appeal. This court will not reconsider such questions. Because our prior ruling reversing the first grant of summary judgment actually ruled on the damage issue, it prevented the district court from granting summary judgment a second time. We reverse the grant of summary judgment once again.

1

This is a legal malpractice action brought by Daniel and Sara Zimmerman against attorney Richard Brown and his law firm, Brown, Isern & Carpenter. The allegations revolve around the sale of the Zimmermans' Amway business, now called Quixtar, to Richard Brown and his wife, Marlene Brown.

In the first appeal, a panel of this court found that the district court had improperly granted summary judgment in favor of the law firm based on the doctrines of in pari delicto and illegality. See *Zimmerman v. Brown*, 49 Kan. App. 2d 143, 150-158, 306 P.3d 306 (2013), *rev. denied* 298 Kan. 1209 (2013). We will refer to this ruling as *Zimmerman I.* The panel also found that the Zimmermans had come forward with sufficient evidence to establish the essential elements of a legal malpractice cause of action and, thus, were entitled to proceed with their claim. 49 Kan. App. 2d at 158-161. The panel remanded the matter to the district court.

On remand, the law firm moved for summary judgment on grounds that the Zimmermans' failed to present sufficient evidence of the appropriate measure of damages based on the value of Quixtar and, thus, the lost profit evidence presented by their expert was speculative. The district court granted summary judgment in favor of the law firm and dismissed the case with prejudice.

Because the law of the case doctrine disposes of the claims at this stage, we reverse the judgment of the district court on that ground without reaching the merits of any other claims on appeal.

The underlying facts of the parties' dispute are set forth in *Zimmerman I.* We need not repeat them here. What is more important is the procedural history surrounding that appeal and the district court's grant of summary judgment.

*We review the results of* Zimmerman I.

In *Zimmerman I*, the panel found that the district court's decision to grant summary judgment to the law firm based on the doctrines of in pari delicto and illegality was premature and improper. Specifically, the panel held that the doctrine of in pari delicto did not prohibit the Zimmermans from recovering damages against the law firm for legal malpractice given that a genuine issue of material fact existed about the parties' relative appreciation of their wrongful acts. *Zimmerman I*, 49 Kan. App. 2d at 154-155.

Additionally, a genuine issue of material fact existed on whether damages sustained by the Zimmermans from the law firm's breach of fiduciary duty were a natural and probable consequence of the Zimmermans' decision to sell Quixtar to the Browns; thus, precluding summary judgment based on an illegality defense. *Zimmerman I*, 49 Kan. App. 2d at 156-158.

The law firm also asked the *Zimmerman I* panel to address the question left unanswered by the district court—the propriety of summary judgment on the merits of the Zimmermans' underlying claim of legal malpractice. In so doing, the panel rejected the law firm's argument that the Zimmermans had failed to present sufficient evidence to establish the essential elements of a legal malpractice cause of action. 49 Kan. App. 2d at 158-161; see *Canaan v. Bartee*, 276 Kan. 116, 120, 72 P.3d 911, *cert. denied* 540 U.S. 1090 (2003).

The *Zimmerman I* panel found that there were genuine issues of fact about whether Richard breached his fiduciary duty owed to the Zimmermans. 49 Kan. App. 2d at 158-161.

Then, the panel addressed the issue of damages by finding that there was a causal connection between the law firm's breach of duty and the Zimmermans' alleged damages.

3

In rejecting the law firm's assertion that "there [was] insufficient evidence from which a jury could find that the plaintiffs' alleged damages were caused in any way by Richard's negligence in preparing and/or participating in the Independent Business Sale Agreement dated January 18, 2007," the panel specifically found evidence from the Zimmermans' expert created a submissible case on damages:

> "But the defendants misconstrue the plaintiffs' assertions regarding the cause of the damages they allegedly sustained. Specifically, the plaintiffs assert that they would not have gone through with the sale of their business to the Browns if Richard had adequately satisfied his legal duty to inform them of the conflict of interest presented by the sale of their business to the attorney representing them in the transaction and his legal duty to advise them to seek the advice of independent counsel before entering into that agreement. To support this assertion, the plaintiffs offered as evidence the opinion of Moore, who stated that Richard's breach of his duties caused the plaintiffs to sustain damages in the form of lost compensation and business development opportunities. *The plaintiffs also offered as evidence the expert opinion of Gary Baker, Ph.D., an economist. Relying on the historical earnings of the plaintiffs' Quixtar business and projecting those earnings out over a period of 30 years, Dr. Baker calculated the damages sustained by the plaintiffs range from a low of $751,665 to a high of $1,503,330. Based on these submissions, we find sufficient evidence from which a jury could find that the plaintiffs suffered damages* and that these damages were caused by the defendants' breach of legal duty." (Emphasis added.) *Zimmerman I*, 49 Kan. App. 2d at 161.

The *Zimmerman I* panel ultimately reversed and remanded the case to allow the Zimmermans to move forward with their legal malpractice claim. 49 Kan. App. 2d at 161.

*The district court grants the law firm summary judgment a second time.*

In September 2014, the law firm filed a second motion for summary judgment because the Zimmermans had failed to proffer evidence to support an essential element of their legal malpractice claim—damages. Specifically, the law firm argued that summary

judgment was proper because the Zimmermans failed to present sufficient evidence of the correct measure of damages based on the value of the business and that the evidence Baker presented based on lost gross annual income figures was speculative. In the alternative, the law firm argued the district court should limit the question of damages by not taking into consideration any benefit future generations may have received.

The Zimmermans responded by arguing the law of the case doctrine. In their view, the district court should not consider the law firm's motion because the finding in *Zimmerman I* that Baker's expert opinion evidence and damage calculations were sufficient evidence of harm and was the settled law of the case. Also, the evidence of gross income from Quixtar, or "'mailbox money,'" was indeed evidence of lost net income.

The law firm replied by asserting that its issues on the appropriate measure of damages and the speculative nature of the Zimmermans' method of calculating the alleged damages were not before the *Zimmerman I* panel because those issues had not been raised.

The district court subsequently granted summary judgment to the law firm and dismissed the Zimmermans' case with prejudice. The district court, relying on the law firm's argument, stated that the panel somehow did not address damages:

> "It is important to carefully analyze [*Zimmerman I*], both in terms of what was decided by that Court and what was not. The issues raised before COA and its decision dealt with proximate causation, *i.e.* was there sufficient evidence and controverted material facts to at least survive summary judgment and proceed on with the lawsuit? COA found that plaintiffs had presented sufficient evidence to establish the essential elements of a legal malpractice claim and were entitled to proceed beyond summary judgment stage. COA also found that there was sufficient evidence, if believed, from which a jury *could* find plaintiffs suffered damages that were caused by the defendants'

5

breach of a legal duty. It is important to note that COA did *not* find that damages were indeed sustained or that there was an actual breach of a legal duty. *And, as noted above, the certainty or quality of damages was not before COA. The parties had apparently agreed that damages would not be an issue to be presented to COA*; and, as noted, it was not submitted to the trial court." (Emphasis added.)

The district court, without citing any authority, found that "the proper measure of damages, as is the case with most lost business ventures, would be the present value of the Quixtar business at the time of the claimed tortious conduct." Given this conclusion, the district court found Baker's expert opinion about damages presented an "unacceptable speculation of projected gross revenue flow."

On appeal, the Zimmermans make three arguments about defects in the district court's damage analysis.

- First, the district court's ruling violates the law of the case doctrine and there were genuine issues of fact relating to damages that allowed the case to proceed to trial.
- Second, the district court erroneously concluded that the only measure of damages in this case was Quixtar's value at the time of the alleged tortious conduct.
- Third, even if the Zimmermans' evidence of damages was speculative, the discovery compelled after the law firm filed their second motion for summary judgment turned up undisputed concrete evidence of damages.

Because we hold the first contention is dispositive, we reverse the district court on that ground. We need not reach the merits of the remaining arguments.

6

*A brief review of the law is helpful here.*

When the underlying facts and procedural history relevant to the law of the case are undisputed, an appellate court's consideration of the doctrine presents a legal question subject to unlimited review. *State v. Parry*, 51 Kan. App. 2d 928, 930, 358 P.3d 101 (2015), *petition for review granted* July 21, 2016.

It is well settled in Kansas that matters decided in an earlier appeal are the law of the case governing future proceedings in the same case. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1212, 308 P.3d 1238 (2013); *Lechleitner v. Cummings*, 160 Kan. 453, 456, 163 P.2d 423 (1945). Once an appellate court decides an issue, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice. *State v. Collier*, 263 Kan. 629, Syl. ¶ 3, 952 P.2d 1326 (1998).

The doctrine is not an inexorable command. Rather, the purpose of the doctrine is to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts. *Collier*, 263 Kan. 629, Syl. ¶ 2. The doctrine operates in tandem with the mandate rule, requiring a district court to implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces. *Collier*, 263 Kan. 629, Syl. ¶ 4.

The law firm, of course, denies the argument that *Zimmerman I* is the settled law of the case on the question of whether there was sufficient evidence of damages to preclude summary judgment. Instead, to us, the law firm repeats almost verbatim the argument it made to the district court not to consider the *Zimmerman I* panel's ruling on damages because it was dicta:

"On appeal, Defendants briefed *in pari delicto*, illegality, and proximate cause. . . . In addressing proximate cause, [*Zimmerman I*] held there was sufficient evidence from which, if believed, a jury could find Plaintiffs' alleged damages were proximately caused by Defendants' alleged malpractice. [*Zimmerman I*] did not consider or address the appropriate measure of damages, Plaintiffs' method of calculating them, nor whether Plaintiffs' damages were too speculative. [Citation omitted.] Those issues were not raised before the district court *and consequently were not raised in Plaintiffs' first appeal.* The findings of [*Zimmerman I*] cited to by Plaintiffs, addressed proximate cause, and nothing more, concluding only that there was in the record at that point sufficient evidence on the issue of damages. To the extent the Court found Plaintiffs' damages were possible, it was at most dicta, and significantly, the Court's comments were based upon Defendants' stipulation to Plaintiffs' damages for the purposes of summary judgment on liability." (Emphasis added.)

But that is simply not true. In fact, the law firm did make the same argument in *Zimmerman I* that they made to the district court here. In seeking summary judgment, it argued the Zimmermans had failed to present evidence of the correct measure of damages based on the value of Quixtar and that "[t]here is no law to support an argument that the damages for a loss of a business are equal to an alleged future gross income stream." The law firm argued that Baker's report and opinion on damages based on lost future gross annual income failed to take into consideration factors relevant to the valuation of a business and, thus, was improper speculation. More importantly, as mentioned, the law firm told the district court it could decide the question of the appropriateness of damages because those issues had not been raised in *Zimmerman I*.

The record in *Zimmerman I* shows to the contrary. The law firm, in briefing the proximate cause element of the legal malpractice claim, similarly argued the Zimmermans had failed to show they had suffered actual damages. Specifically, they contended:

"Since Plaintiffs offered no evidence of the value of their business, nor offered any expert opinions on it, their claims cannot be proven as a matter of law. *Plaintiffs' expert arrived at the sum of $1,503,330.00 by arbitrarily selecting annual gross income of $30,000.00 and multiplying it over a period of eighty (80) years. Plaintiffs' damage calculation was based solely on gross income, and did not take into consideration the operating expenses or the fact they were projecting its receipt far beyond their own lifetimes. Despite their claim that their expert's opinion established their loss, there is no law that supports a claim that the damages for a loss of a business are equal to the future gross income stream. Rather, the damages, if any, would be the value of that business.* While value may be based on an income approach, the law is clear that only net income may be considered in setting a value. [Citations omitted.] Plaintiffs offered no evidence whatsoever of their net income or what their real loss, if any, was." (Emphasis added.)

To advance its motion for summary judgment before the district court a second time in this case, the law firm clearly misstated the record in the former appeal and depends on the same misstatement in this appeal. To compound matters, the record indicates that the district court relied upon the law firm's misstatement to distinguish the *Zimmerman I* panel's ruling on the question of damages and ultimately granted summary judgment in its favor.

Clearly, the *Zimmerman I* panel heard the same argument and obviously rejected it.

Our Kansas Supreme Court stated the law of the case rule as follows:

"When a second appeal is brought to the appellate courts in the same case, the first decision is the settled law of the case on all questions involved and decided in the first appeal and reconsideration will not be given to such questions. This law of the case rule applies where the evidence in the second trial, or second appeal, is substantially the same as in the first appeal." *Miller v. Zep Mfg. Co.*, 249 Kan. 34, Syl. ¶ 9, 815 P.2d 506 (1991).

9

*Zimmerman I* addressed the law firm's argument that it was entitled to summary judgment because the Zimmermans did not establish the essential elements of a legal malpractice cause of action. 49 Kan. App. 2d at 158-161. After all, if the Zimmermans, as the nonmoving party, did not sufficiently establish *each* of the essential elements of their legal malpractice claim on which they had the burden of proof, the law firm would have been entitled to summary judgment. See *Dozier v. Dozier*, 252 Kan. 1035, 1041, 850 P.2d 789 (1993).

In other words, the *Zimmerman I* panel had to consider whether the Zimmermans had showed (1) Richard's duty to exercise ordinary skill and knowledge; (2) Richard's breach of that duty; (3) a causal connection between the law firm's breach and the Zimmermans' resulting injury; and (4) actual damages sustained by the Zimmermans. See *Canaan*, 276 Kan. at 120. In addressing the fourth element in conjunction with the causation element, *Zimmerman I* found that Baker's expert testimony regarding "the historical earnings of the plaintiffs' Quixtar business and projecting those earnings out over a period of 30 years" established actual damages. 49 Kan. App. 2d at 161.

The evidence on actual damages before the district court on the second motion for summary judgment was identical to the evidence before the *Zimmerman I* panel. See *Miller*, 249 Kan. 34, Syl. ¶ 9. And, the same question the law firm raised regarding damages in the prior appeal is before us again in this appeal. See 249 Kan. 34, Syl. ¶ 9.

Contrary to the law firm's assertion, nothing in *Zimmerman I* reflects the prior panel based its conclusion regarding the element of actual damages on a stipulation by them. We also see no specific circumstance that would excuse the application of the law of the case doctrine given that *Zimmerman I* determined the outcome of the first summary judgment on the same evidence under the correct legal standard. See *Collier*, 263 Kan. 629, Syl. ¶ 3. Moreover, the law firm does not claim manifest injustice and we find none here. See 263 Kan. 629, Syl. ¶ 3. Contrary to what the law firm would have us believe, it

10

had the benefit of presenting this argument in questioning the propriety of the Zimmermans' appeal of the original grant of summary judgment.

Because the ruling of the *Zimmerman I* panel is the law of the case, we find the district court erroneously granted summary judgment. We reverse that judgment. We remand the matter allowing the Zimmermans, once again, to go forward with their claim.

Reversed and remanded.