No. 47,020

RICHARD ALLEN SLY, a Minor, By and through Beverly Jean Sly, Mother and Next Friend, *Appellant*, v. THE BOARD OF EDUCATION OF THE CITY OF KANSAS CITY, KANSAS, WESLEY R. CHANNELL and RONALD JOST, *Appellees*.

(516 P. 2d 895)

Opinion filed December 8, 1973.

*Lloyd Burke Bronston,* of Bronston and Smith, of Kansas City, argued the cause, and *James F. Savage,* of the same firm, was with him on the brief for the appellant.

*Frank Saunders, Jr.,* of Overland Park, argued the cause, and *Richard T. Merker,* of Overland Park, was with him on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is a negligence action by a public school student for damages for personal injuries resulting from an assault by fellow students. Joined as defendants were the board of education and its members and the principal and vice-principal of the junior high school where the incident occurred. Maintenance of a nuisance was also alleged as a ground of recovery against the school board. Summary judgments were rendered for all defendants, from which plaintiff appeals.

In a separate proceeding the trial court first rendered summary judgment for the school board and its members, this on the theory that under the doctrine the governmental immunity they were not liable for negligent acts performed while acting in a governmental capacity and further that no actionable nuisance was shown. Later the trial court summarily entered judgment for the principal (Chan-

nell) and vice-principal (Jost) on the ground any negligence on their part was not the cause of appellant's injuries.

The only facts supplied us in the case are those stated in the trial judge's second memorandum opinion, which statement is conceded by appellant to be an accurate chonology of events. We quote the portions of that opinion relating to the facts:

"This lawsuit arises out of a fight between plaintiff and two Negro students outside Argentine Junior High School just before the doors were opened at 7:15 A. M., on May 16, 1969.

"The case was filed September 10, 1969, discovery has been completed, and pretrial conference has been held. Summary judgment in favor of the Board of Education and the individual members of the Board was sustained January 20, 1972, on the grounds of sovereign immunity of the School Board [plus no nuisance shown].

"The allegations of negligence in the Amended Petition are rather broad and general. Basically, however, plaintiff's complaint is that the defendants were negligent in that they failed to adopt any policy or rules for supervising the students waiting outside in the morning before the doors opened, and failed to provide any supervision although they knew that such situation was potentially dangerous.

"It is undisputed that the plantiff, age fourteen, was a student at Argentine Junior High School, that he got on the school bus at approximately 7:00 A. M. and arrived at the school just before 7:15 A. M. It is also undisputed that students began arriving as early as 7:00 A. M. and except in bad weather are required to remain outside until the doors are opened at 7:15 A. M., and that no one is assigned to supervise the students during this period while they are outside.

"There are two versions, of course, as to the racial situation at Argentine High School, and as to the fight involved here. The evidence most favorable to plaintiff, however, is that on the day before the fight, plaintiff and some of his friends overheard William King, a Negro student, saying 'bad names' about someone, and plaintiff asked King if he were talking about plaintiff. King replied that it was none of his business. Subsequently, King confronted plaintiff outside the door of plaintiff's classroom and pushed him and asked plaintiff if he wanted to fight. Plaintiff said he did not want to fight. At this point a teacher intervened and sent plaintiff into the classroom and King left. This incident was not reported to defendants by the teacher until after the fight.

"The following morning plaintiff got off of the school bus and walked up the steps to the school grounds. He had just arrived at the top of the steps when he saw King who was sitting on a wall along the steps. King got up and started pushing plaintiff and asking him if he wanted to fight. Plaintiff again said he did not want to fight, and the next thing he knew, Calvin Brown jumped out at him and struck him. After this, then William King also hit him. Plaintiff was not sure whether he hit anyone or not, and it was all over in a matter of seconds. He ran up to the door and asked Mr. Jost to let him in, and he went into the school.

"According to plaintiff, Brown had no reason for striking him and he had never had any trouble with him before. His testimony was that there was friction between the whites and the blacks at school, and that he had seen a fight between a colored girl and a white girl outside the school once and also one between two white boys. Also that some colored girls were mad at his sister and had tried to fight her. There is no evidence of any prior fights between students while waiting for the doors to open in the morning.

"The school records show that William King was fifteen years of age and was a discipline problem because of talking and disrupting the class, but not because of fighting or violence. Several weeks before the fight, his woodworking teacher had taken a knife from him. King explained that he brought it because he heard that a group of students from Rosedale High School were coming over to cause trouble. Calvin Brown, also a Negro student, age seventeen, had the reputation as a troublemaker and a bully. He was also a discipline problem at the school. After the fight, Calvin was expelled, and William was transferred to another school.

"It is plaintiff's contention that the defendants knew or should have known of the propensity of King and Brown as troublemakers, that they knew or should have known of the pushing incident the day before between King and plaintiff, and that they knew of the friction between the black and white students, and that under the circumstances they were negligent in failing to provide for any supervision over the students outside the school before the doors were opened in the morning.

"It is defendants' contention that they are not responsible for the children until the doors are open and the children are inside the school and that, in any event, the lack of supervision outside the school was not the proximate cause of the fight and plaintiff's resulting injuries.

. . . . . . . . . . . . . . . . . . .

" '. . . Plaintiff's evidence shows that defendants Channel and Jost had no knowledge of the pushing incident between plaintiff and King until after the fight, that plaintiff was pushed by King without provocation and unexpectedly struck by Brown without any reason, and that it all happened in a matter of seconds. There was no reason for either defendant to anticipate that Brown and King would assault plaintiff that morning. Nor does the evidence suggest in any way that King or Brown would have been deterred by a rule or the presence of a supervisor nearby.

. . . . . . . . . . . . . . . . . . .

"On the basis of the evidence before me, it is my opinion that if the defendants were negligent in failing to provide for supervision of the students outside the door of the school, then such negligence was not the proximate cause of plaintiff's injuries."

In urging reversal of the judgment summarily rendered in favor of the appellee board of education and its members appellant acknowledges that in their operation of a public school system they were acting in a governmental as distinguished from a proprietary capacity and further that there was no statutory exception to the

doctrine of governmental immunity in effect at the time of this occurrence which would make them liable in tort while so acting. However, he asserts this case falls within the exception stated in *Rose v. Board of Education*, 184 Kan. 486, 337 P. 2d 652, as follows:

"A well-recognized exception, however, to the general rules pertaining to immunity of a governmental instrumentality for tort liability while engaged in a governmental function, is that the doctrine of immunity does not extend to cases where the conduct of the city or, as here, a school board, results in creating or maintaining a nuisance." (p. 489.)

Succinctly stated, appellant contends that permitting students to gather on the school grounds without access to the school building and without prescribing supervision constituted an on-going nuisance. Appellant points out that in *Rose* we commented ". . . it may be stated as a general rule that what may or may not constitute a nuisance in a particular case depends upon many things, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its frequency, continuity or duration, the damage or annoyance resulting, and that each case must of necessity depend upon the particular facts and circumstances." (p. 489.)

In *Allen v. City of Ogden*, 210 Kan. 136, 499 P. 2d 527, recovery was sought from a city on the theory that excessive force by a city police officer in making an arrest and continued harassment of the arrested person constituted a nuisance. In concluding the actions complained of did not constitute a nuisance this court relied on a definition found in many of our decisions as follows:

"A nuisance is an annoyance, and any use of *property* by one which gives offense to or endangers life or health, violates the laws of decency, unreasonably pollutes the air with foul noxious odors or smoke, or obstructs the reasonable and comfortable use and enjoyment of the property of another, may be said to be a nuisance." (pp. 139-140.)

*Allen* is representative of the strict standard of proof applied in determining what constitutes a nuisance where a municipality is acting in its governmental, as distinguished from proprietary, capacity.

Appellant cites no case in which particular acts or omissions of school authorities have been held to constitute a nuisance. Running throughout all our cases where recovery has been allowed against either private persons or municipalities engaged in proprietary functions on the basis of nuisance is the element of a wrongful,

offensive, continuous condition impendingly dangerous to health or the property rights of others peculiarly subject to the hazard (see discussion and cases cited in *Culwell v. Abbott Construction Co.,* 211 Kan. 359, 506 P. 2d 1191.) In *Jones v. City of Kansas City,* 176 Kan. 406, 271 P. 2d 803, an action alleging nuisance was brought against a school board for personal injuries sustained by a student. Plaintiff appealed from an order sustaining a demurrer to her petition. After reciting the traditional definition of nuisance and noting the contents of the petition this court stated:

"The above allegations do not charge the Board with the creation of a nuisance, rather if an unsafe condition is created it is by the pupils, and if the Board is to be charged in any manner it is because its employees do not prevent the pupils from splashing the water on the floor and dropping the towels—in which event the failure of the employees might possibly be negligent, but the situation created would not be a nuisance in law and the rule as to governmental immunity would apply." (pp. 409-410.)

In *Koehn v. Board of Education,* 193 Kan. 263, 392 P. 2d 949, the plaintiff student had returned to school following the noon recess and was required to remain outside the school building until classes resumed. During this wait on the school grounds he was injured by reason of the "horseplay" of another student. His suit against the board was based on lack of rules prescribing supervision during the period and the board's failure to discharge its statutory duty to provide a healthful place to receive education. Demurrer to plaintiff's petition was sustained. In affirming the judgment this court commented that the petition contained no allegation which could be construed as charging the board with creating or maintaining a nuisance.

Actions in other jurisdictions where recovery for assaults by fellow students in the absence of supervision has been predicated on maintenance of a nuisance, have likewise met a similar fate in the appellate courts (see anno. Schools—Torts—Sovereign Immunity, 33 A L R 3d 703, 756-759). Illustrative is *Husser, Aplnt. v. Pittsburgh School Dist.,* 425 Pa. 249, 228 A. 2d 910, in which a student sought damages for injuries received when he was beaten by a group of rowdy youths while leaving the school at the end of the day's classes and after he had refused demands for money. His complaint alleged that similar criminal acts had occurred with great frequency in and about the school during the months immediately preceding the attack alleged; that the school district and its

agents knew of these prior occurrences and the danger present to those attending the school but did not take any precautionary measures to protect the plaintiff or other pupils attending the school. The court held that the alleged dereliction on the part of the school may have amounted to negligence but did not constitute maintenance of a nuisance to which the governmental immunity rule was inapplicable.

In the case at bar the board's conduct complained of simply cannot be classified as a nuisance so as to place it and its members within the exception to the governmental immunity rule. Hence the trial court properly rendered summary judgment for the board and its members.

We turn now to appellant's contention the trial court erroneously entered summary judgment for the principal and vice-principal, appellees Channell and Jost. It should first be noted that the doctrine insulating municipalities from liability for acts done in performing a governmental function does not extend to negligent employees of the municipalities. In *Rose v. Board of Education,* supra, the rule was stated:

"In principle as well as in logic, we think that sound public policy requires that a public employee be held accountable for his negligent acts to those who suffer injury by reason of his misconduct, even though he is about the business of his empoyer (such as here, the school board) which is immune from tort liability under the governmental function doctrine. In other words, the official cloak of immunity should not extend to the negligent employee so as to shield him from answering for his wrongful act by which another has suffered injury." (p. 491.)

It is thus apparent that even though governmental immunity precludes action against the board of education, absent a nuisance, the principal and vice-principal may be held individually liable for any negligence on their part causing injury. Recovery against them is predicated on their failure to adopt any policy or rules for supervising students waiting on the grounds in the morning before the school building was unlocked and in failing to provide supervision although they knew that such situation was potentially dangerous.

In rendering judgment the trial court concluded as a matter of law that a teacher owes a duty to exercise due care for the safety of students in his charge, the standard being that degree of care which a person of reasonable prudence would exercise under the circumstances, and that this duty is not limited to students inside

the school building but extends to those outside either on the playground or where they are congregated awaiting entry in the morning under proper circumstances. However, the court refrained from specifically finding a breach of this duty but, as already indicated, rendered summary judgment on the theory that if the principal and vice-principal were negligent in failing to provide for supervision of students waiting outside the building, such negligence was not the proximate cause of appellant's injury. We shall deal with this approach.

In considering the problem certain rules governing propriety of summary judgment must be borne in mind.

K. S. A. 60-256 (c) fixes the standard for determining whether summary judgment should be granted. In pertinent part it provides:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In *Lawrence v. Deemy,* 204 Kan. 299, 461 P. 2d 770, we stated (citations omitted):

"Generally before a summary [judgment] may be granted, the record before the court must show conclusively that there remains no genuine issue as to a material fact, and that the moving party is entitled to judgment as a matter of law. A mere surmise or belief on the part of the trial court, no matter how reasonable, that a party cannot prevail upon a trial will not warrant a summary judgment if there remains a dispute as to a material fact which is not clearly shown to be sham, frivolous, or so unsubstantial that it would be futile to try the case. The manifest purpose of a summary judgment is to obviate delay where there is no real issue of fact. A court should never attempt to determine the factual issues on a motion for summary judgment, but should search the record for the purpose of determining whether factual issues do exist. If there is a reasonable doubt as to their existence, a motion for summary judgment will not lie. A court, in making its determination, must give to the party against whom summary judgment is sought the benefit of all inferences that may be drawn from the facts under consideration.

"Regardless of how refined or sophisticated we attempt to state the summary judgment rule, we always return to the language of the statute itself (K. S. A. 60-256 [c])—there must remain 'no genuine issue as to any material fact.' A natural result of this requirement is that in negligence cases summary judgment is seldom proper.

". . . While the stage of the proceedings does not necessarily determine the propriety of summary judgment being rendered, ordinarily it should not be granted when pretrial discovery remains incomplete." (pp. 301-302.)

In *Hastain v. Greenbaum*, 205 Kan. 475, 481, 470 P. 2d 741, we quoted approvingly from 3 Barron and Holtzoff, Federal Practice and Procedure, rules edition, § 1234, as follows:

" 'Normally where the only conflict is as to what legal conclusions should be drawn from the undisputed facts, a summary judgment should be entered. [p. 128.] . . . It has been said that an issue is material if the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail. . . . It has been said that a genuine issue is one which can be maintained by substantial evidence. Where the pleadings or proof of either party disclose that no cause of action or defense exists, a summary judgment may be granted. [pp. 131-132.] . . . A popular formula is that summary judgment should be granted on the same kind of showing as would permit direction of a verdict were the case to be tried. [p. 133.] . . . If there is any question as to the credibility of witnesses or the weight of evidence, a summary judgment should be denied.' (p. 134.)" (p. 481.)

And in *Sade v. Hemstrom*, 205 Kan. 514, 471 P. 2d 340, we held:

"A party cannot escape summary judgment on the mere hope that something may develop at the trial, or by remaining silent and later claiming additional facts supporting a defense or a cause of action." (Syl. ¶ 1.)

Here it appears discovery was complete when summary judgment was rendered, depositions having been taken of all the parties and of the two offending students as well, and the trial court had before it pertinent school records requested by appellant. Neither at trial level nor here has appellant pointed out any other or further evidence which would be available in support of his claim and he has acknowledged that the trial court's opinion contains an accurate statement of the facts. He has not suggested any favorable inference overlooked by the court. Upon this state of the record appellant is in no position now to challenge the rendition of summary judgment on the ground it was prematurely entered.

We consider then whether the court properly terminated the case on the issue of legal causation of the facts before it. Appellant contends the violence he sustained was foreseeable and simply argues the record presented a strong case of causal connection between appellees' alleged dereliction and his injury which should have been submitted to a jury for final determination. Appellees assert there was no causal connection between any inadequacy on their part and the willful and wrongful assault on appellant by his fellow students. They rely on that which has classicly been known as independent intervening cause. They also assert there is no

showing which would justify the conclusion that supervision would have prevented appellant's injury. We hesitate to adopt this latter position in the posture of summary judgment although some courts in other states have done so upon the facts before them (see citations in anno. Schools—Tort Liability—Students' Acts, 36 ALR 3d 330, 334, footnote 5).

In *Gard v. Sherwood Construction Co.*, 194 Kan. 541, 400 P. 2d 995, we stated that ordinarily the determination of proximate cause rests in the province of the jury, or the court, as trier of the fact. Proximate cause was defined as follows:

"The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the injury would not have occured, an additional condition sometimes stated being that it must appear the injury was anticipated or that it reasonably should have been foreseen by the person sought to be charged with liability." (pp. 546-547.)

In *Gard* we also held:

"The rule that the causal connection between an actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause." (Syl. ¶ 3.)

In *Stevenson v. City of Kansas City*, 187 Kan. 705, 360 P. 2d 1, this court was concerned with the issue of causation. There, while plaintiff was attending a wrestling match in a public building she was assaulted by a would-be robber carrying a heavy metal object. She sought damages from the owner of the building and the operators of the sporting event on various grounds of negligence including lack of supervision and adequate measures for protection of paying customers. In the course of its opinion holding that no cause of action was stated in plaintiff's petition, this court quoted approvingly the following:

"Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur.

"While it is not a necessary element of negligence that one charged with negligence should have been able to anticipate the precise injury sustained, a person is not charged with all possible consequences of his negligent acts. He is not responsible for a consequence which is merely possible according to occasional experience, but only for those consequences which are probable according to ordinary and usual experience.

"Defendant's negligence is too remote to constitute the proximate cause where an independent illegal, willful, malicious, or criminal act of a third person, which could not reasonably have been foreseen, and without which such injury would not have been sustained, intervenes. A person is not bound to anticipate the malicious, willful, or criminal acts of others by which damage is inflicted. . . ." (707-708.)

The foregoing is in accord with general principles of law where the question of liability has been disposed of on the causation issue, *i. e.*, assuming negligence on a defendant's part, whether a subsequent wrongful act was that which traditionally has been known as intervening and superseding cause. These principles have found expression in 57 Am. Jur. 2d, Negligence, § 206, as follows:

"Where the courts consider the question of proximate cause as determinative of liability in such cases, the general rule is that when, between an original negligent act or omission and the occurrence of an injury, there intervenes a willful, malicious, and criminal act of a third person who was negligent, and could not have been foreseen by him, the causal chain between the negligence and the accident is broken." (pp. 580-581.)

Thus it appears that foreseeability may be a factor pertinent to the determination of causation, as well as in the delineation of negligence, when an act of a third party plays a roll in the injury, and this court has so declared.

Here appellant's injury was directly caused by the sudden, unexpected, unprovoked, wrongful assaults upon him by his fellow students, King and Brown—an incident characterized by the trial court as "all over in a matter of seconds". King had been a "discipline problem" in school but not because of fighting or violence. Brown likewise bore the same label and had the reputation of troublemaker and bully. Although there had been some difficulty between appellant and King outside the classroom on the previous day, the incident was not reported to the principal or vice-principal until after the affray in question. More importantly, the trial court specifically found there had been no prior fighting between students while waiting for the schoolhouse doors to open in the morning—the critical time and area wherein lack of supervision is asserted by appellant as causing his injury. Deliberate malicious assaults by students should not be required to be anticipated by school personnel in the absence of notice of prior misconduct of that nature or the likelihood thereof. To hold otherwise would virtually cast school authorities in the role of insurers of the safety of all pupils in their charge. In summation, the facts relied upon by

appellant were insufficient to show that appelles reasonably should have foreseen the occurrence causing his injury. Appellant's injury must be regarded as legally caused by the sudden, unexpected intervention of King and Brown rather than lack of supervision on appellees' part. The trial court did not err in rendering summary judgment for appellees Channell and Jost.

Judgment affirmed.

APPROVED BY THE COURT.

FATZER, C. J. and SCHROEDER, J., dissent on disposition of appeal with respect to appellees Channell and Jost.