No. 63,136

STEPHEN W. HACKLER, a Minor, By and Through His Natural Father and Next Friend, RAYMOND M. HACKLER, *Appellant*, v. UNIFIED SCHOOL DISTRICT NO. 500, OF KANSAS CITY, KANSAS, *Appellee.*

(777 P.2d 839)

Opinion filed July 14, 1989.

*Michael E. Callen*, of Callen, Sexton & Shelor, of Kansas City, argued the cause and was on the brief for the appellant.

*Douglas C. McKenna*, of Watson, Ess, Marshall & Enggas, of Olathe, argued the cause, and *Steven B. Moore*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, C.J.: This is a personal injury action for damages brought by the plaintiff, Stephen W. Hackler, a minor, against the defendant, Unified School District No. 500, Kansas City, Kansas. The trial court sustained defendant's motion for summary judgment, and plaintiff appeals.

The issues raised in this appeal may be concisely stated as follows: Did U.S.D. No. 500 breach any duty it owed to the plaintiff? If so, is the District exempt under the discretionary function exemption of the Kansas Tort Claims Act, K.S.A. 1988 Supp. 75-6104(e)? Were any acts or omissions of the District the proximate cause of plaintiff's injuries and damages?

The facts, for the most part, are undisputed. During the 1985-86 school year, Stephen Hackler, then nine years of age, attended Welborn Elementary School in Kansas City, Kansas. On

April 15, 1986, as he had done all year, Stephen rode the school bus home from school and got off at a bus stop on the south side of Leavenworth Road, directly across the street from his home. His home was on the north side of Leavenworth Road. Stephen did not attempt to cross Leavenworth Road in front of the bus; instead, he walked along the south side of the road, picking flowers for his grandmother. Quite a while later, and after the bus had left the area and was out of sight, plaintiff attempted to cross Leavenworth Road about a block from his home and was struck by a car driven by Amos Coleman.

Leavenworth Road is a busy thoroughfare. There were school bus stops on each side of the street. The bus on which plaintiff was riding stops on the south side of the street. Another bus stops on the north side of the street. Before the school year started, a letter was sent to all parents, enclosing a bus schedule and asking the parents to select the bus stop nearest their home on their side of the street. From time to time during the school year, a reminder was included in the weekly bulletins concerning the hazardous nature of Leavenworth Road. In his deposition, plaintiff said that his father refused him permission to ride the bus that would have deposited him on the north side of Leavenworth Road. Apparently there are no sidewalks on the north side of Leavenworth Road, and the bus stop on that side of the street was about a block away from plaintiff's home. Plaintiff's father stated in his deposition that it was his usual practice to read the bulletins from the school, but he did not recall seeing a bus schedule or any statements with regard to traffic on Leavenworth Road, and he did not know that a bus stopped on the north side of Leavenworth Road.

The driver of the school bus, Jean Braddy, testified that she was told not to allow students to cross Leavenworth Road. Had she known that Stephen Hackler lived on the north side of Leavenworth Road, she would have reported to her supervisor that she had a child crossing Leavenworth Road who needed to change buses. To her knowledge, none of the students who rode with her crossed Leavenworth Road. She dealt not with a single load of children from a single school; she picked up students at several schools, both elementary and high schools, at different times, and transported them. She did not know where Stephen Hackler lived.

We turn to the first and controlling issue: Did the District breach any duty which it owed to Stephen Hackler? Plaintiff claims that the District owed him the following duties:

1. To instruct him to cross the street in front of the school bus;

2. to unload him on that side of the street on which he lived;

3. to require him to cross the street in front of the school bus; and

4. to prohibit him from being unloaded at a bus stop on the side of Leavenworth Road opposite that on which he lived.

The trial court found that the District did not owe any duty to the plaintiff which was breached. As we said in *Meyers v. Grubaugh*, 242 Kan. 716, 724, 750 P.2d 1031 (1988): "Actionable negligence must be based on a breach of duty. Existence of duty is a question of law. *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983)." It was thus the obligation of the district court in the first instance, and this court on appeal, to determine whether a duty existed. Without a duty, there could be no breach which would support plaintiff's claim.

Plaintiff concedes that a school district has discretion to determine whether to provide school bus transportation. K.S.A. 72-8302. Plaintiff argues, however, that once the district has undertaken the duty to provide transportation, its school buses must be operated in accordance with the uniform act regarding traffic on the highways and regulations adopted by the secretary of transportation. K.S.A. 72-8308. The uniform act regulating traffic mandates that the secretary of transportation adopt rules and regulations to govern the design and operation of school buses. K.S.A. 8-2009. Pursuant to that statute, the secretary has provided for a transportation supervisor for each school district, K.A.R. 36-13-31, and has imposed upon the supervisor various duties. Plaintiff points out the following provisions of K.A.R. 36-13-31 which he contends are important in the context of this litigation. They are:

"The duties of the transportation supervisor shall include the following:

. . . .

"(3) School bus routes. (A) the transportation supervisor shall carefully plan and study all school bus routes with particular consideration given to hazards encountered on each route. Hazards shall be avoided whenever possible.

. . . .

"(4) School bus route stops.

"(A) The transportation supervisor shall establish all regular school bus route stops for the loading or unloading of students.

"(B) Stops shall be reviewed at least annually for safety hazards.

. . . .

"(5) Loading and unloading assistance. The transportation supervisor shall be responsible for providing supervision of the loading and unloading of school bus passengers."

The plaintiff argues that the duty of assigning a student to a bus that would unload the student upon the side of the street upon which he or she lives is a ministerial task, one for which liability attaches. Under the facts before us, we do not agree. The school bus assignment system in effect in U.S.D. No. 500 consists of, first, a request to the parents to select a bus for their child. Parents are asked to select the bus stop nearest their home on their side of the street. Once responses are received from the parents, the teachers keep records on bus assignments for an annual transportation report and in the event that a student forgets his bus number. The school itself does not select which bus the children will ride; that duty has been delegated to the parents. Some children regularly go directly home; others perhaps go to baby sitters, to child care centers, to grandparents' homes, or to the homes of relatives or friends. Clearly, the parents are in the best position to review the bus schedules and routes and select the bus for their child or children to ride. We find nothing in the regulations or statutes which places upon the school districts the duty of assigning students to buses. The facts before us, where the duty of selecting the bus for a student to ride rests upon the parents and not the school district, preclude liability of the District for the alleged improper selection of a bus.

Plaintiff argues that K.A.R. 36-13-33(b)(3) creates a duty to instruct all children to cross the street in front of the school bus. That regulation reads:

"(3) The school bus driver shall require the student or students to cross the roadway, highway or street upon which the bus is stopped, in front of the bus, and at a distance that allows the school bus driver to see the student or students as they cross."

The following paragraphs of the regulation are also pertinent. They provide:

"(4) The school bus driver shall not move the school bus from the bus stop until all students discharged who must cross the roadway upon which the bus is

stopped have done so. The driver shall ascertain that the students not crossing the roadway are a safe distance from the bus so that movement of the bus would not endanger the students.

"(5) The driver shall not permit students who are to be loaded on or unloaded from the bus to cross the roadway upon which the bus is stopped until the students may safely do so."

Any duty under these regulations to instruct the children how to cross the street, and to see that they obeyed those instructions, clearly applies only to those students who must cross the street. So far as the bus driver was aware, none of the children whom she transported crossed Leavenworth Road. Plaintiff rode this bus from September until the following April. The bus driver did not know that he lived on the other side of the road, otherwise the driver would have recommended that plaintiff be assigned to a different bus. On the day of the accident, plaintiff did not attempt to cross Leavenworth Road until long after the bus departed from the scene. The driver had no duty or obligation to direct the children to cross the road in front of the bus when, so far as the driver was aware, none of the children needed or intended to cross Leavenworth Road.

Plaintiff claims that the District had a duty to unload plaintiff on the side of the road on which he resides, and to prohibit him from being unloaded at a bus stop on the side of the street opposite his residence. We find nothing in the statutes or administrative regulations requiring a school district to unload students on the side of the street on which they live. To the contrary, the regulations last quoted above indicate that some students will cross the road after they are unloaded. The District here encouraged parents to select bus stops so that their children would not have to cross busy streets; to that end, the District provided bus stops on both sides of Leavenworth Road. The law does not require a school district to unload students only on the side of the street on which the student lives, or to prohibit students from being discharged on the side of a street other than the side on which the student lives. We find no merit in this claim.

Plaintiff argues that the District had a duty not to move the school bus until plaintiff had crossed the roadway. There is no claim that the bus was moved when the students were not at a safe distance from it. Again, the driver did not know that plaintiff lived on the opposite side of the street or that plaintiff had to

cross Leavenworth Road to get home. Plaintiff never attempted to cross the street within the view of the bus driver. Under the circumstances, and also for the reasons stated in our earlier discussion, K.A.R. 36-13-33(b)(3) does not create the duty claimed.

Finally, plaintiff claims that by delegating the bus assignment to the parents the District ignored the supervision requirements set forth in K.A.R. 36-13-31. That regulation, set forth at length above, does not require the District or its transportation supervisor to assign students to buses. The supervisor is charged with the responsibility of establishing and planning the school bus routes and bus stops, and reviewing them for safety hazards. However, as we noted earlier, parents are in the best position to determine which bus their child should ride. This decision may hinge on where the child is to go after school. The District is not in a position to know where each child is to go after school and the location of those various places. The District did not ignore or violate the provisions of K.A.R. 36-13-31.

For the reasons stated, we agree with the trial court that the District did not breach any duty which it owed to the plaintiff. Having reached that conclusion, we need not determine the other issues raised in this appeal.

The judgment is affirmed.