The Honorable Don Steffes State Senator, 35th District State Capitol, 128S Topeka, Kansas 66612
Dear Senator Steffes:
As Senator for the Thirty-Fifth District, you request our opinion regarding the authority of a unified school district to provide transportation for pupils attending a public school. Specifically, you ask whether a unified school district may divert a school bus from its regular transportation route one afternoon a week so as to provide transportation of pupils to catechism classes.
Based on the information provided, it appears Unified School District No. 397 (USD 397, Centre) provides transportation of pupils to and from its schools in Lost Springs. Some parents have requested that the school district transport their children on Wednesday afternoons to the City of Pilsen so that the children may attend catechism classes conducted by the Holy Family Church. In order to provide the transportation, a school bus would be diverted from its regular transportation route established by the school district.
Information regarding whether all the pupils who would be transported to Pilsen are furnished transportation by the school district at any other time is not provided.
The authority of a unified school district to provide or furnish transportation for pupils attending school is derived from K.S.A. 72-8302, as amended by L. 1996, ch. 141, § 3. See Hackler v. U.S.D. No. 500, 245 Kan. 295,297 (1989); State ex rel., Stephan v. U.S.D. 428,231 Kan. 579, 584 (1982). The board of education of a unified school district is authorized under K.S.A. 72-8303
to prescribe the regular transportation routes over which transportation of its pupils is to be provided every school day. U.S.D. 428, 231 Kan. at 582. A school district also possesses the authority to provide transportation of pupils engaged in field trips or extracurricular school activities. K.S.A. 72-8305.
A school district is an arm of the state existing only as a creature of the Legislature to operate as a political subdivision of the state and possessing only such power and authority as is granted by the Legislature. NEA-Wichita v. U.S.D. No. 259, 234 Kan. 512, syl. ¶ 2 (1983). Any reasonable doubt as to the existence of such power or authority should be resolved against its existence. Hobart v. U.S.D. No. 309,230 Kan. 375, 383 (1981). While a unified school district may provide or furnish transportation for pupils, the authority to do so is not unlimited. As prescribed by state statute, transportation of pupils may only be provided or furnished along the regular transportation routes established by the unified school district or for the purpose of permitting pupils to engage in field trips or extracurricular school activities.
The ability of a unified school district to transport pupils to a religious facility in which the pupils attend catechism classes is subject to the Establishment Clause of the First Amendment to the United States Constitution, applicable to the state through theFourteenth Amendment. A principle at the heart of the Establishment Clause is that the government should not prefer one religion to another, or religion to nonreligion. Board of Education of Kiryas Joel v. Grumet, 512 U.S. ___, 129 L.Ed.2d 546, 560,114 S.Ct. 2481 (1994). Aiding a single, small religious group causes no less a constitutional problem than would follow from aiding a sect with more members or religion as a whole. Id., 129 L.Ed.2d at 562. The United States Supreme Court implemented in Lemon v. Kurtzman,403 U.S. 602, 29 L.Ed.2d 745, 91 S.Ct. 2105 (1971), a three-pronged test to be applied in determining whether governmental action comports with the Establishment Clause. Under the Lemon test, the challenged governmental action: (1) must have a secular purpose; (2) must not have the principal or primary effect of advancing or inhibiting religion; and (3) must not foster an excessive entanglement with religion. Lamb's Chapel v. Center Moriches Union Free School District,508 U.S. 384, 395, 124 L.Ed.2d 352, 113 S.Ct. 2141
(1993).
 "In proscribing all laws respecting an establishment of religion,' the Constitution prohibits, at the very least, legislation that constitutes an endorsement of one or another set of religious beliefs or of religion generally. It is part of our settled jurisprudence that the Establishment Clause prohibits government from abandoning secular purposes in order to put an imprimatur on one religion, or on religion as such, or to favor the adherents of any sect or religious organization.' [Citations omitted.] The core notion animating the requirement that a statute possess a secular legislative purpose' and that its principal or primary effect . . . be one that neither advances nor inhibits religion' [citation omitted] is not only that government may not be overtly hostile to religion but also that it may not place its prestige, coercive authority, or resources behind a single religious faith or behind religious belief in general, compelling nonadherents to support the practices or proselytizing of favored religious organizations and conveying the message that those who do not contribute gladly are less than full members of the community." Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 9, 103 L.Ed.2d 1, 109 S.Ct. 890 (1989).
In your request, reference is made to the cases of Everson v. Board of Education, 330 U.S. 1,91 L.Ed. 711, 67 S.Ct. 504 (1947) and Zobrest v. Catalina Foothills, 509 U.S. 1, 125 L.Ed.2d 1, 113 S.Ct. 2462
(1993). These cases stand for the proposition that a unified school district may provide services to pupils despite the fact religion may be furthered if the services are the result of a general program available to all pupils. In Everson, the public school district provided, pursuant to the laws of New Jersey, transportation for all pupils attending public or non-profit schools. Partial effect of the program was to provide reimbursement for transportation expenses to parents whose children attended non-profit parochial schools. In reviewing the constitutionality of such reimbursements, the United States Supreme Court determined the state did not contribute money to or support the parochial schools, but rather did no more than provide a general program to help parents get their children, regardless of their religion, safely and expeditiously to and from accredited schools. Everson,330 U.S. at 18.
In Zobrest, the petitioner requested the public school district provide him with a sign language interpreter pursuant to the individuals with disabilities education act (IDEA), 20 U.S.C. § 1400 et seq., at the parochial school he attended. The service, the Court determined, was part of a general government program that distributed benefits neutrally to any pupil qualifying as handicapped under the IDEA, without regard to the sectarian-nonsectarian, or public-nonpublic nature of the school the pupil attends. The service would be provided on the premises of a sectarian school only as the result of the private decision of the parents and could not be attributed to state decision making. Zobrest, 125 L.Ed.2d at 11.
While most bus rides have no inherent religious significance, Committee For Public Education v. Nyquist, 413 U.S. 756, 782, 37 L.Ed.2d 948,93 S.Ct. 2955 (1973), such significance may occur when a school bus is diverted from its regular transportation route in order to provide transportation of pupils to a religious facility to attend catechism classes if such deviations from regular routes are not available to any other parents and pupils. See Kiryas Joel, 129 L.Ed.2d at 560. The effect in this instance would essentially be a demonstration of governmental preference of one religion over other religions or nonreligion. However, if the same service is made available to other religious and nonreligious groups, no preference would exist and the transportation would be permissible.
As demonstrated by case law, governmental preference of one religion over other religions or nonreligion is not permitted under the Establishment Clause of theFirst Amendment of the United States Constitution. Given the constitutional and statutory restrictions, a unified school district may permit pupils of the school district to utilize the district's transportation services in order to arrive at a religious facility in which the pupils will attend catechism classes if such transportation occurs along the regular transportation routes designated by the unified school district, as required by state statute, and the same service is available for pupils seeking transportation to other religious or nonreligious facilities.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm