No. 84,726

TODD M. GLASER, a minor, by and through his next friends, LELAND and PAGAN GLASER, *Appellants*, v. EMPORIA UNIFIED SCHOOL DISTRICT NO. 253, BOARD OF EDUCATION; DOUGLAS EPP, in his capacity as an individual and as a representative or employee of Emporia Unified School District No. 253; and PATRICIA GOULD-LIPSON, *Appellees.*

(21 P.3d 573)

Opinion filed April 20, 2001.

*Michael C. Helbert*, of Law Offices of Michael C. Helbert, of Emporia, argued the cause and was on the brief for appellants.

*J. Steven Pigg*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *Michelle R. Stewart*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J: This is a personal injury action brought on behalf of Todd Glaser, a seventh-grader at Lowther Middle School in Emporia, Kansas. When he was chased by another student, he ran off school grounds into a public street. He was injured in a collision with a car driven by Patricia Gould-Lipson. Glaser settled his claims against the driver, and the district court granted summary judgment in favor of Emporia School District No. 253 (school

district) and Douglas Epp, a teacher. Glaser appeals from the trial court's entry of summary judgment. The case was transferred from the Court of Appeals pursuant to K. S. A. 20-3018(c).

In its memorandum decision granting the summary judgment motions of the school district and the teacher, the district court reviewed a number of controverted factual issues. The only factual findings the district court determined to be necessary to its decision are the following:

"1. The plaintiff was injured when he collided with an automobile on the 22nd day of December 1993.

"2. Prior to the collision, the plaintiff was on school property that was unsupervised by Emporia Unified School District No. 253 employees.

"3. The collision between the plaintiff and an automobile driven by Patricia Gould-Lipson occurred prior to classes beginning, and the collision occurred on a public street adjacent to school property."

The district court also noted that it was undisputed that the school district "does not exercise supervision before school until a student is in the building."

On appeal, both parties supply additional facts with references to the record. The following "additional facts" are not disputed:

On December 22, 1993, Glaser was a 12-year-old seventh-grade student at Lowther South. He lived approximately a 15- to 20-minute walk from school, and he normally got to school by walking. School began at 8:10 a.m. On the day he was injured, Glaser arrived at school between 7:30 a.m. and 7:45 a.m.

A school district policy, which was approved June 22, 1993, provided: "Teachers who observe students in a potentially dangerous situation should attempt, as they are reasonably able, either to halt or prevent injury to students or property."

The sole issue on appeal is whether the school district owed a duty to Glaser under the circumstances.

The school district and Epp sought summary judgment on several grounds, including immunity from liability under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, the statute of repose, K.S.A. 2000 Supp. 60-513(b), and the absence of an attractive nuisance. The ground on which the district court sustained the summary judgment motions of the school district and Epp is that, in

the circumstances, neither had a duty to supervise Glaser. On appeal, duty is the only issue. Glaser complains of the district court's conclusions that the school district did not owe a duty to supervise him and that the school district had not assumed a duty to supervise him.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 2000 Supp. 60-256(c). On appeal, we apply the same rules. Where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998). Whether a duty exists is a question of law. *Nero v. Kansas State University*, 253 Kan. 567, Syl. ¶ 1, 861 P.2d 768 (1993). This court's review of a question of law is unlimited.

In concluding that the school district and Epp owed no duty to supervise Glaser in the circumstances of this case, the district court cited *Honeycutt v. City of Wichita*, 251 Kan. 451, 836 P.2d 1128 (1992). The district court stated: "In the instant case, the plaintiff has not shown that a duty exists. While the facts are not identical to the *Honeycutt* case, they are similar in that USD 253 does not exercise supervision before school until a student is in the building."

*Honeycutt* also was a personal injury action brought on behalf of a minor in which summary judgment was granted in favor of the school district. This court affirmed. Jeremy Honeycutt attended morning kindergarten. Railroad tracks ran between his house and the school. He usually was taken or escorted to school by an adult, but on March 5, 1987, Jeremy and another student were walking home after school unaccompanied by an adult. Jeremy ran alongside a moving train and fell under the wheels.

Jeremy argued that the school district owed him three duties: "(1) to retain him until an authorized adult took custody of him, (2) to retain him on school property through a 'hold back' policy in the event of a train operating off school property, and (3) to

establish a safety patrol at the railroad crossing." 251 Kan. at 463. His bases for arguing that the school district owed him those duties were that the student-school district relationship created a duty and that the school district assumed a duty by its conduct and written policies.

The court flatly rejected the argument that a duty was created by the student-school district relationship. Jeremy relied on *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986), and *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), which the court readily distinguished.

For his theory that the school district assumed a duty, Jeremy relied on Restatement (Second) of Torts § 324A (1964). Jeremy argued that school district documents showed its assumption of duty, but the court concluded to the contrary that Jeremy's argument was undermined by a school board policy that stated: "[S]chool personnel 'are neither legally liable nor legally responsible for pupils en route to and from school if the pupils walk or furnish their own transportation.'" *Honeycutt*, 251 Kan. at 466. Likewise, the court viewed a school district policy "restricting the area of teacher responsibility to 'the building' and 'the school site'" as a detriment to the claim that the school district affirmatively assumed a duty to ensure Jeremy's safety before and after school. 251 Kan. at 466-67.

With regard to the claim that the school district assumed a duty, the court reviewed a number of cases from other jurisdictions. The court's discussion of the foreign cases is quoted here in full:

"Both parties cite authority from other jurisdictions. Jeremy cites *Jefferson County School Dist. R-1 v. Justus*, 725 P.2d 767 (Colo.1986), and *Brown v. Florida State Bd. of Regents*, 513 So. 2d 184 (Fla. Dist. App. 1987). In *Justus*, a first-grade student was struck by a car off school premises when he rode his bicycle home from school. The Supreme Court of Colorado stated:

'A plaintiff must first show that the defendant, either through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff. . . . Second, a plaintiff must also show either that he relied on the defendant to perform the service or that defendant's undertaking increased plaintiff's risk.' 725 P.2d at 771.

The court concluded that

'respondent has raised a genuine issue as to whether by distributing the handbook and by placing teachers at the front of the school, the school district undertook the task of enforcing a rule that students in the lower grades were not eligible to ride bicycles to and from school. Where, as here, a plaintiff presents some evidence of an affirmative act or promise to act sufficient to create an inference that the defendant undertook a service that would have prevented plaintiff's injuries, that factual question precludes summary judgment on the issue of whether the defendant undertook such a service.' 725 P.2d at 772.

"The case at hand can be distinguished from the *Brown* case, in which the decedent drowned in a lake maintained and controlled by the Board of Regents. For *Brown* and the instant case to be similar, the question in *Brown* would have had to have been whether the Board had assumed a duty to maintain and control the lake.

"U.S.D. No. 259 cites cases from New York and California. We believe this line of cases to be more persuasive than the Colorado case. Upon similar facts, the New York courts have held a school does not have a legal duty to supervise students who are beyond the school's lawful control and custody. See *Pratt v. Robinson*, 39 N.Y.2d 554, 384 N.Y.S.2d 749, 349 N.E.2d 849 (1976); *Palella v. Ulmer*, 136 Misc. 2d 34, 518 N.Y.S.2d 91 (S. Ct.1987).

'The school's duty is thus coextensive with and concomitant to its physical custody and control over the child. When that custody ceases because the child has passed out of the orbit of its authority in such a way that the parent is perfectly free to reassume control over the child's protection, the school's custodial duty also ceases [citations omitted].' *Pratt*, 39 N.Y.2d at 560.

To hold otherwise would create an intolerable burden for the school. *Palella*, 136 Misc. 2d at 37.

"The California courts also have held that '[a] school district is under no duty to supervise, or provide for the protection of its pupils, on their way home, unless it has undertaken to provide transportation for them.' *Kerwin v. County of San Mateo*, 176 Cal. App.2d 304, 307, 1 Cal. Rptr. 437 (1959); see *Gilbert v. Sacramento Unified School Dist.*, 258 Cal. App.2d 505, 65 Cal. Rptr. 913 (1968); *Wright v. Arcade School Dist.*, 230 Cal. App. 2d 272, 40 Cal. Rptr. 812 (1964).

"The New York and California cases are consistent with the rationale and policy expressed in *Hackler v. U.S.D. No. 500*, 245 Kan. 295, 777 P.2d 839 (1989). In *Hackler*, a nine-year-old student was struck by a vehicle while crossing a busy street after getting off the school bus at his designated stop. The school district provided bus stops on both sides of the road. The parents decided which bus the student would ride and selected the bus route that stopped on the other side of the road. The student sued, alleging the school district owed him the following duties:

'1. To instruct him to cross the street in front of the school bus;

'2. to unload him on that side of the street on which he lived;

'3. to require him to cross the street in front of the school bus; and

'4. to prohibit him from being unloaded at a bus stop on the side of [the road] opposite that on which he lived.' 245 Kan. at 297.

This court held the school district did not breach a duty owed to the student, reasoning that

'parents are in the best position to determine which bus their child should ride. This decision may hinge on where the child is to go after school. The [school district] is not in a position to know where each child is to go after school and the location of those various places.' 245 Kan. at 300.

"Although no school-supplied transportation was involved in the instant case, the rationale still applies. Parents are in the best position to determine their children's transportation needs to and from school." 251 Kan. at 468-70.

In the present case, according to Glaser, it necessarily follows from the district court's ruling that the school district's duty to supervise students does not begin until classes are in session. It does not necessarily, or even logically, follow from the district court's ruling that the school district's duty to supervise students does not begin until classes are in session. Because his inaccurate assertion is the springboard for most of his argument, it requires little comment.

Glaser argues that this court rejected the notion that supervision need not begin before commencement of classes in *Sly v. Board of Education*, 213 Kan. 415, 516 P.2d 895 (1973). Glaser's view of *Sly* is inaccurate. Sly was injured in a fight with two other students, which occurred outside a junior high school before classes began in the morning. The school grounds were unsupervised. In a negligence and nuisance action, the district court granted summary judgment against Sly and in favor of the school district and school officials. This court affirmed.

Glaser cites *Greider v. Shawnee Mission Unified School D. 512*, 710 F. Supp. 296 (D. Kan. 1989), on the subject of this court's view of a duty to protect students. In a discussion of the discretionary function exception to the Kansas Tort Claims Act, the federal district court stated:

"The Kansas Supreme Court has never addressed the question of whether public schools and teachers owe a duty to properly supervise students and to take reasonable steps to protect students' safety. However, it is likely that the court would recognize such a duty if the question were presented to it. This is apparent from

dicta in at least two cases. *See Paulsen v. Unified School District No. 368*, 239 Kan. 180, 717 P.2d 1051 (1986) (court assumed that a duty to properly supervise and provide a safe environment to students existed, but affirmed the trial court's dismissal on the grounds that no breach of the duty had been shown); *Sly v. Board of Education*, 213 Kan. 415, 516 P.2d 895 (1973) (court assumed that the duty to exercise due care for students existed and affirmed the trial court's finding that no evidence of breach of the duty existed). The duty is generally recognized in those jurisdictions which have addressed the question. *See* Annotation, *Tort Liability of Public Schools and Institutions of Higher Learning for Injuries Resulting from Lack of Insufficiency of Supervision*, 38 A.L.R.3d 830 (1971)." 710 F. Supp. at 299.

Cases cited by Glaser from other jurisdictions include *Raymond v. Paradise Unified School Dist.*, 218 Cal. App. 2d 1, 31 Cal. Rptr. 847 (1963); *Tymkowicz v. San Jose, Etc. Unified School Dist.*, 151 Cal. App. 2d 517, 312 P.2d 388 (1957); *Bauer v. Minidoka School Dist. No. 331*, 116 Idaho 586, 778 P.2d 336 (1989); *Titus v. Lindberg*, 49 N.J. 66, 228 A.2d 65 (1967); and *Rice v. School District 302, Pierce Co.*, 140 Wash. 189, 248 Pac. 388 (1926). The general principle for which Glaser cites these cases is that schools and school personnel have a duty to protect the safety of students.

In the New Jersey case, a 9-year-old student named Titus was on the grounds of his school, headed for the rack to put up the bicycle that he had ridden there, when he was struck by a paper clip shot from an elastic band by 13-year-old Lindberg. The principal of Titus' school "stated flatly that he maintained 'supervision outside the building on the grounds between eight and 8:30.' " 49 N.J. at 72. For the reason that the principal "assumed the responsibility for supervising the school grounds beginning at 8 a.m.," the New Jersey court rejected the argument that his responsibilities did not begin before 8:15. 49 N.J. at 74. The New Jersey court gave an additional reason:

"They customarily began coming at 8 a.m and that was reasonable. Smith[, the principal,] undoubtedly knew of their coming and of their 'keep away' games. When all this is coupled with the fact that Fairview was also a pickup site for the older students, the dangers and the need for reasonable supervision from 8 a.m. on were entirely apparent. [Citation omitted.]" 49 N. J. at 75.

*Titus* could be distinguished from the present case on the ground that Lowther Middle School was not a designated pickup site for

older students. In addition, in contrast with the position taken by this court in *Sly*, the deliberate conduct of the student who actually inflicted the injury was not considered to be the proximate cause. See 49 N.J. at 76.

In *Tymkowicz*, a 10-year-old student died from injuries sustained on the school grounds while he was engaged in a game with other students. The object of the game was to render a participant unconscious. The principal admitted knowing that the game was played, and there was no evidence of any efforts by school authorities to stop the game. The California Education Code contained a provision requiring that "[e]very teacher in the public schools shall hold pupils to a strict account for their conduct . . . on the playgrounds, or during recess." 151 Cal. App. 2d at 522. The distinction with the present case is obvious. The injury occurred during recess, on school grounds, and we have no comparable statute.

In *Bauer*, the Idaho court rejected the claim that that state's recreational use statute immunized the school district from liability to a student who was injured on school property shortly before school began. The Idaho court believed that the "special relationship that a student has to a school district would be substantially impaired if the recreational use statute were applied to injuries children suffered while on school premises as students." 116 Idaho at 588-89. In contrast, this court in *Jackson v. U.S.D. 259*, 268 Kan. 319, 995 P.2d 844 (2000), held that the recreational use statute immunized the school from liability for an injury occurring to a student in a school gymnasium during a required physical education class. See *Boaldin v. University of Kansas*, 242 Kan. 288, 747 P.2d 811 (1987).

In *Raymond*, a 7-year-old boy waited on the grounds of the high school for the school bus that took him to his elementary school. He was injured when he ran toward the bus before it came to a halt, placed his left hand on the side of the bus, and fell backward on the sidewalk. The jury found that the school district was negligent in failing to provide for supervision of the bus boarding area. A basis on which the appellate court affirmed the judgment were statutory provisions obliging the school district, once it furnished transportation for students, to provide a reasonably safe system.

218 Cal. App. 2d at 9. Other considerations were: (1) that supervision of the bus stop on the grounds of the high school rather than in an isolated place was a practical possibility for the school district, (2) that it was a very busy stop, with up to three busloads of students arriving and departing there at peak periods, and (3) that small children were present. 218 Cal. App. 2d at 10.

Although there are some similarities between the present case and *Raymond,* differences prevail. The injured student in the California case, Raymond, was 7, and Glaser was a seventh-grader. Raymond was injured at a school district designated bus stop, and Glaser was injured when he ran off school grounds into a public street.

In *Rice,* an 11-year-old student was severely shocked and burned on the school grounds before classes began when he pulled on a radio aerial wire, which had broken after being installed for a PTA entertainment, and the radio wire dropped on electric wires. Earlier, several teachers passed by, saw Rice and other boys tugging on the broken wire, and told them to play elsewhere. In response, Rice played football for awhile before returning to the wire. School policy provided playground supervision for one-half hour before classes, but there was no supervision at the time of the injury. There was disputed evidence about whether the injury occurred within the period that should have been supervised. The disposition of the case in the student's favor, however, did not turn on the issue of supervision. The school district was charged with the duty "from the time the defendant had knowledge that the wire was dangling down and reaching the ground where pupils might take hold of it" to put the school grounds in a reasonably safe condition. 140 Wash. at 192.

The present case does not involve an extraordinary, dangerous condition on the school grounds such as the one that existed in *Rice.* Nonetheless, Glaser quotes Section 364 of the Restatement (Second) of Torts, Creation or Maintenance of Dangerous Artificial Conditions (1964). Generally stated, § 364 provides that a landholder is subject to liability for injuries caused by a structure or other artificial condition created by the landholder or with his permission. Proximity to the public street and the absence of a fence

seem to be the conditions complained of by Glaser. Neither would seem to be a structure or other artificial condition within the meaning of § 364. With regard to this claim, the trial court stated that Glaser "provides no evidence that would meet the duty announced in *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 756 P.2d 416 (1988)."

Glaser relies on *Jackson*, 268 Kan. 319, and *Boaldin*, 242 Kan. 288, for the proposition that the school district has a duty to maintain the school grounds in a condition that is safe for uses that can reasonably be anticipated. As we have seen, however, the decisions in *Jackson* and *Boaldin* were based on the recreational use exception to liability under the Kansas Tort Claims Act.

Glaser asserts that his classroom was locked at the time of his injury, thus forcing him to remain outside on the unsupervised school grounds. There is nothing in the district court's findings of fact that would support the assertion. Nor does Glaser supply a reference to the record where his assertion is supported. The school district, on the other hand, furnished a reference to the record where there is evidence that Glaser had the option of waiting inside the school building where the school provided supervision before classes began. Moreover, the trial court stated in its Memorandum Decision that "USD 253 does not exercise supervision before school *until a student is in the building*." (Emphasis added.)

The district court found that neither the school district nor Epp had assumed a duty to supervise Glaser. Glaser's contention that they had assumed a duty to supervise rests on written school district policies, including the following provisions: "Students shall be under the supervision of appropriate school personnel at all times when they are under the jurisdiction of the school," and "[t]eachers who observe students in a potentially dangerous situation should attempt, as they are reasonably able, either to halt or prevent injury to students or property." Glaser contends that the policies constitute "clear evidence" that the duty to prevent injury was not limited to the interior of the building or the time when classes are in session. He further contends that the policies demonstrate that the

school district assumed a duty to protect students in any potentially dangerous situation. We disagree.

In the trial court, the school district included in its motion for summary judgment the following statements of fact:

"13. The District provided no supervision before school outside the building. (Citation omitted.)

"14. The District policy does require teachers to intervene if dangerous activity is observed even if the teacher is not specifically assigned to supervision. (Citation omitted.)"

In his response, Glaser admitted both statements and added the following to No. 14:

"Plaintiff would add that on December 22, 1993, Unified School District No. 253 had in effect a policy requiring teachers 'who observe students in a potentially dangerous situation [to]attempt, as they are reasonably able, either to halt or prevent injury to students or property.' [Citation omitted.] Prior to the accident, a teacher for Lowther Middle School, Douglas Epp, observed Todd and Justin playing and running in an area not ten feet away from Congress street. [Citation omitted.] Despite observing the students in a potentially dangerous situation, he took no action. He simply kept walking, even though he would later admit to Pagan Glaser that he thought 'somebody was going to run out in that street and get hit by a car.' [Citation omitted.]"

In its reply, the school district countered that "Epp's testimony was that he did caution the boys from playing around the cars near the street." The school district characterized Glaser's additional comments as "extraneous" and provided no record cite for Epp's asserted testimony. In other words, the school district was trying to avoid a dispute as to a material fact that might preclude summary judgment. The trial court, it seems, agreed with the school district that the question of an assumption of duty could be based strictly on the language of the policies without reference to the particular facts of the incident in which Glaser was injured. The district court's Memorandum Decision contains no mention of this factual basis. Thus, the issue for this court is simply whether the school district, by adopting its written policies, assumed to protect the safety of students gathered on the school grounds before classes began. Epp's presence and conduct are not relevant to the court's

review of the trial court's entry of summary judgment on the assumption of duty question.

The legal basis for Glaser's contention is Restatement (Second) of Torts § 324A (1964), and its interpretation in *Honeycutt*, 251 Kan. 451, and *McGee v. Chalfant*, 248 Kan. 434, 806 P.2d 980 (1991). Section 324A, which involves liability to third persons for negligent performance of an undertaking, provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

In *Honeycutt*, the court engaged in an extensive discussion of § 324A and its application, which is instructive and, therefore, is quoted here:

"This court has accepted § 324A's theory of liability and established the following principles:

'The threshold requirement for the application of the Restatement (Second) of Torts § 324A (1964) is a showing that the defendant undertook, gratuitously or for consideration, to render services to another. In order to meet this requirement, the evidence must show the defendant did more than act, but *through affirmative action* assumed an obligation or intended to render services for the benefit of another.'

'A duty is owed to third persons by one who undertakes, *by an affirmative act*, to render aid or services to another and then is negligent in the performance of that undertaking.' *McGee*, 248 Kan. 434, Syl. ¶ ¶ 5, 6. (Emphasis added.)

'For a defendant to meet the threshold requirements of § 324A, the defendant must not only take affirmative action to render services to another, but the person to whom the services are directed *must accept such services* in lieu of, or in addition to, such person's obligation to perform the services.' *Gooch*, 246 Kan. at 676. (Emphasis added.)

'The extent of the undertaking should define the scope of the duty.' *McGee*, 248 Kan. at 442.

'[O]ne who does not assume an obligation to render services does not owe a duty to third persons.' *Anderson v. Scheffler*, 248 Kan. 736, Syl. ¶ 3, 811 P.2d 1125 (1991).

"In *Gooch*, 246 Kan. at 669-70, this court reviewed recent cases applying § 324A:

'In each of the Kansas cases imposing liability under § 324A, it was clear that [the threshold] requirement was met. In *Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585 (1982), KCPL agreed to and was hired to render traffic engineering services to the City. In *Ingram v. Howard-Needles-Tammen & Bergendoff*, 234 Kan. 289, 672 P.2d 1083 (1983), the Kansas Turnpike Authority hired Howard-Needles as its consulting engineers to make safety inspections of the turnpike and thus render services to the KTA. In *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), there was evidence the county agreed with Kansas State Penitentiary officials and other law enforcement agencies to notify these agencies of escapes from the penitentiary. In *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986), the police were obligated by a general police department order to take certain incapacitated persons into custody. Further, in the cases not finding a duty, it was clear there was no undertaking. In *Hanna v. Heur, Johns, Neel, Rivers & Webb*, 233 Kan. 206, [662 P.2d 243 (1983),] the court found the defendant architects did not agree to be responsible for safety practices on the jobsite and took no actions indicating they assumed any such responsibility. In *Meyers v. Grubaugh*, 242 Kan. 716, 750 P.2d 1031 (1988), the State simply allowed the intoxicated employee to leave work. Thus, in all cases where it was found that the parties undertook to render services to another, they agreed to or were obligated to perform services for another that were accepted and thus the initial requirement of § 324A was met; and, in all cases where liability was not imposed, the defendants had no agreement and took no affirmative action that could be construed as an intentional undertaking to render services to another.' " 251 Kan. at 464-65.

In *Honeycutt*, the court rejected plaintiff's argument that the school district assumed a duty by its written policies. 251 Kan. at 464-68.

Within the discussion of *Honeycutt* in Glaser's brief, he quotes from a Colorado case that the court quoted in *Honeycutt*. In *Jefferson County School Dist. R-1 v. Justus*, 725 P.2d 767 (Colo. 1986), the school district had a rule that young students were not eligible to ride bicycles to and from school. A first-grade student was injured when he was struck by a car off school premises riding his bicycle home from school. The Colorado court concluded that summary judgment was precluded by the factual issue whether "by distributing the handbook and by placing teachers at the front of

the school, the school district undertook the task of enforcing" the bicycle rule. 725 P.2d at 772. Although Glaser seems to rely on *Justus*, that case actually highlights a weakness in Glaser's argument. In *Justus*, the Colorado court found a question of fact relating to an assumption of duty rather than an assumption of duty. Moreover, it was not merely the school district's having a written policy that created the question of assumption of duty. Instead, it was affirmative acts taken by the school district in furtherance of enforcing the bicycle rule that gave rise to the question of whether a duty had been assumed. In this regard, the Colorado court stated: "A plaintiff must first show that the defendant, either through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff." 725 P.2d at 771.

Here, as in *Honeycutt*, the injury occurred off school premises and at a time when the student was not on school property or in school custody. Todd was injured after he ran off the school grounds, across a parking area and into a city street. The school district never undertook to render services calculated to protect or supervise Todd, either by affirmative acts or promise to act, nor was Todd under the control or in the custody of the school district. Thus, as in *Honeycutt*, there has been no showing that a student-school district duty existed.

Affirmed.